**Arthur D. OTT, Plaintiff-Appellant,**

v.

**MIDLAND–ROSS CORPORATION, Defendant-Appellee.**

**No. 77–3118.**

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 3, 1978.

Decided June 4, 1979.

---

William E. Armstrong, Hesser, McGraw & Armstrong Co., Cleveland, Ohio, Lester H. Needham, Jr., Mentor, Ohio, for plaintiff-appellant.

George J. Moscarino, Jones, Day, Reavis & Pogue, Bruce J. Havighurst, Cleveland, Ohio, for defendant-appellee.

Before WEICK, ENGEL and MERRITT, Circuit Judges.

ENGEL, Circuit Judge.

This case, arising under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1976), as amended by Pub.L.No. 95–256, 92 Stat. 189 (1978), is once more before us following an earlier remand by our court. In *Ott v. Midland-Ross Corp.*, 523 F.2d 1367 (6th Cir. 1975), we reinstated Ott's complaint after the district court had ordered it dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P. The underlying facts in *Ott I* remain applicable here:

Count I of the complaint alleged that on January 4, 1971, when Ott was age 60, his employer, Midland-Ross Corporation, willfully and intentionally discharged him without cause, solely because of his age. On April 27, 1971 he filed a notice with the Secretary of Labor of his intent to file a civil action against Midland-Ross for violation of his rights under the Act, as required by 29 U.S.C. § 626(d). Thereafter, he was advised that the Department of Labor had obtained Midland-Ross' voluntary compliance with the Act and that he would be reinstated. Ott

alleged that while he was awaiting a job assignment the corporation willfully, maliciously and falsely represented that if he would forego his rights under the Act, it would hire him as a consultant at least ten days each month and that he would make more money under such an arrangement. Relying on the representations, and believing them to be true, Ott accepted early retirement and entered into the consulting agreement on October 7, 1971.

Count II stated an alternative claim for breach of contract.

*Id.* at 1368.

As noted by Judge Weick in *Ott I*, the plaintiff was terminated from his employment with Midland-Ross on January 4, 1971, and his cause of action under the Age Discrimination in Employment Act accrued on that date. Because he alleged a willful violation of the Act, he had three years thereafter within which to commence his action, the Age Discrimination Act having adopted by reference Section 6 of the Portal-to-Portal Act, 29 U.S.C. § 255 (1976), and that Act's three-year statutory period for willful violations. *Ott I*, 523 F.2d at 1369 n. 1. Ott did not commence his action in the district court until August 22, 1974, approximately seven and one-half months after the three-year period of limitations would normally have expired.

In the order which was the subject of the first appeal, the district court had held that Ott, by his own admission, waived his rights under the Act when he entered into the consultation agreement with Midland-Ross after his termination. Disagreeing, we held in *Ott I* that the allegations of his complaint, if proved, would be sufficient to create an estoppel against Midland-Ross' assertion of either the consultation agreement or the statute of limitations as a bar to the action. Relying upon the principle that "no man may take advantage of his own wrong," we held that an employer whose actions induced its employee to delay filing a suit would be estopped from asserting that the employee's subsequent conduct waived his rights under the Act, citing *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), and related cases. We further held, however, that even if Ott had, in fact, been wrongfully induced by the defendant to delay filing suit until after the running of the limitation period, he was nonetheless obligated to "bring suit within a reasonable time after discovery, or within a reasonable time after he should have discovered the actions of the defendant that induced him to delay filing suit." 523 F.2d at 1370.

Upon remand by our court, Midland-Ross again moved for summary judgment, this time on the basis that upon the undisputed facts, Ott's cause of action was barred by his unreasonable delay in filing suit after he should have discovered the wrongful inducement. Acknowledging that, as we held in *Ott I*, the normal three-year period of limitation might be tolled or suspended by the conduct of the employer in having fraudulently induced Ott to delay filing his suit until after the statutory limitation had expired, the district judge nonetheless held that the undisputed facts, construed as he conceived them in a light most favorable to the plaintiff, showed that Ott, after discovering the employer's fraud, had nonetheless waited an unreasonable length of time within which thereafter to commence his suit, and that he was, therefore, no longer entitled to enjoy the benefits of the estoppel.

A mass of material was adduced by both parties in support of and in opposition to Midland-Ross' motion for summary judgment on the statute of limitations issue. The district judge placed exclusive reliance upon a letter of July 25, 1972, from G. L. Winger, vice-president of a division of Midland-Ross, to Ott, in which Winger informed Ott that he was not presently needed as a consultant but that if a need did arise, Ott's services would be considered.[1]

---

1. Dear Art:

This is in reference to your letter of July 10, 1972, concerning your offer to act as a Traffic Consultant for the National Castings Division. Bob McIntire, John Schuller and I have reviewed this subject and, frankly, John's letter of February 2, 1972, on this same subject, pretty well covers our situation at National.

This letter, according to the district court's opinion, "placed the plaintiff on notice that the October 7, 1971 agreement was not going to be carried out. If this be the fraud about which plaintiff complains he had the responsibility to file his suit within a reasonable time thereafter. He did not. He waited until August 22, 1974, more than two years, to file his complaint. Beyond two years is not a 'reasonable' period within which to file a complaint in the context of this case." [2]

The letter of July 25 is but a portion of the extensive evidence submitted for the court's consideration. It is apparent that the district judge conceived the question on summary judgment to be whether Ott knew or should have known that his consultation contract would not be honored by Midland-Ross. We cannot agree. While that question may be pertinent to his pendent contract claim, a matter we do not address, the issue before the court on summary judgment in his age discrimination case is somewhat different. It may well be that by July 25, 1972, Ott should have known that the company was not going to furnish him substantial employment opportunities under the consultation agreement; it by no means

follows as a matter of law that Ott would inevitably have been led by that time to the conclusion that the contract itself had been procured by material misrepresentations of fact, or that Midland-Ross had entered into the agreement without intent to perform it and for the purpose of inducing him to forego suit until the statute of limitations had expired.

■ Upon an examination of the record, we conclude that the district court improvidently granted summary judgment in favor of the employer upon the facts available to him. Instead, we hold that the evidence on the issue was conflicting and that reasonable persons, applying a proper construction of the law of estoppel, as hereinafter set forth, would differ as to whether Ott slept upon his rights for an unreasonable time after he should have discovered the deception and before commencing his age discrimination action.[3]

■ Midland-Ross also urges us to affirm the judgment of the district court on the ground that, as a matter of law, Ott has failed to sustain his claim that an estoppel was created by the conduct of Midland-Ross. We reject this argument.[4] Viewed

---

> In summary, we feel that we have a Traffic Department which more than adequately covers our Division needs. If, however, a special situation develops and our Traffic people need outside counseling, we will consider your services.
>
> If we can be of any further help, please let us know.
>
> > Sincerely,
> > S/ Leo
> > G. L. Winger
> > Vice-President and
> > General Manager

2. In support of its conclusion the district court cited the annotation at 44 A.L.R.3d 760 (1972) and commented:

> What constitutes a reasonable time in which to file suit varies within the facts of each case, but in the great majority of cases it has been held to be less than two years.

3. The question of whether, under summary judgment procedures, a material dispute of fact exists is not dependent solely upon whether the evidence itself is undisputed, but rather whether the evidence and all reasonable inferences

therefrom are likewise undisputed. If they are and if no reasonable person could construe the evidence and its inferences other than in a single fashion, it is appropriate to render judgment if the application of the law to those facts leads to but a single result. Rule 56, Fed.R. Civ.P.

4. We also reject Midland-Ross' claim that the parol evidence rule precludes Ott from proving fraud or misrepresentation in the inducement. While this rule might normally apply to bar an effort to vary the terms of a contract as written, it would not be applicable on the more narrow question of whether the agreement itself might properly be pleaded in bar of the age discrimination action. Evidence may be admitted to show fraudulent inducement even though it contradicts the written document. *E. g., United States v. 1,557.28 Acres*, 486 F.2d 445, 448 (10th Cir. 1973); *Klapmeier v. Telecheck International, Inc.*, 482 F.2d 247, 257 (8th Cir. 1973); *Neff & Fry Co. v. Ashmead*, 36 F.2d 771 (2d Cir. 1929) ("it is well established that this [parol evidence] rule does not prevent the introduction of evidence showing fraud in the

in the light most favorable to Ott, the record discloses that on April 27, 1971, shortly after his discharge, Ott filed with the Secretary of Labor a timely notice of intent to sue Midland-Ross under the ADEA, as required by 29 U.S.C. § 626(d). The Labor Department, acting through one Brushaber, attempted conciliation of the dispute by contacting Philip Canepa, general counsel of defendant, and another of its attorneys. On June 23 Brushaber informed Ott that he had convinced Midland-Ross to rehire him and suggested that, because its officials had spoken highly of him, Ott might have more success negotiating the details of the re-employment directly with the company rather than through the Department of Labor.

■ During the course of negotiations which ultimately led to the consultation agreement, Canepa told Ott that the consultation agreement would be financially more advantageous than his prior employment with Midland-Ross, that there was "a great deal of consulting work . . . within the corporation," and that "as a minimum" he would receive consultation assignments for an average of ten days per month. While the consultation agreement does not mention a guarantee or minimum, Ott's offer of proof would support a finding that this understanding was omitted "on Mr. Canepa's expressed concern that the minimum days might be construed as a limitation on Mr. Ott's time."

Canepa identified Midland-Ross' need for Ott's services as follows: "an average of four days work per month in the corporate office, three days per month from National Castings Division and three days per month from the Midrex Division."

Despite Canepa's representations as to the prospective requirements of National Castings and Midrex, the record indicates that officials of those divisions of defendant never stated to Canepa that they could use his services for an average of three days a month. One Midland-Ross official stated that "he had no idea where Mr. Canepa . . . got the idea there was any traffic consulting work available at the National Castings Division." In fact, Ott never worked a single day for either division under the consultation agreement.

Canepa gave assurances that he would "take positive steps to see that Mr. Ott would be hired as a consultant by divisions of the corporation and smooth over the animosity created within the corporation by Mr. Ott's threatened litigation." Even though it appeared from the outset of the agreement that Ott was not being utilized to the extent of his expectations, Canepa continually urged Ott to be patient, allaying his concerns by informing him that it would "take time" for the corporation's divisions to accept and employ his services. There is ample evidence to support a jury finding that, anxious to have the agreement succeed and to avoid reviving earlier antagonisms, Ott was lulled into nonaction.

At the very least, the jury could find that the consultation agreement was the product of material misrepresentations of fact by Midland-Ross' general counsel. At worst, it could find that defendant's conduct constitutes fraud, it having entered into the consultation agreement without intending to honor it and for the purpose of frustrating

---

inducement."). Our court's ruling in *Globe Steel Abrasive Co. v. National Metal Abrasive Co.*, 101 F.2d 489 (6th Cir. 1939), made in the context of a claim of fraudulent inducement, is directly pertinent to this case:

> It requires no citation of authority for the principle that concealment of a material fact may be ground for the avoidance of a contract, and it is likewise the general rule that a promise made with a present intention not to perform is a misrepresentation of an existing fact which may be shown by extrinsic evidence to have induced the execution of a contract, and so as ground for avoiding it.

*Id.* at 491.

The rationale for permitting extrinsic proof of fraud or misrepresentation is obvious: strict application of the parol evidence rule would permit the perpetrator of fraud to achieve his aim simply by failing to include the fraud on the face of the contract. As the Supreme Court determined over a century ago, "if these facts may not be established by parol evidence, there can be no remedy in such cases, however gross the fraud or ruinous the consequences may be." *Iasigi v. Brown*, 58 U.S. (17 How.) 182, 194, 15 L.Ed. 208 (1854).

Ott's intention to seek redress under the ADEA. For the reasons stated below, either construction of the foregoing evidence, if credited by the jury, would suffice to estop Midland-Ross from asserting either the consultation agreement or the statute of limitations in avoidance of Ott's claim. As noted above, the record also presents a question for the jury as to the date on which Ott discovered or reasonably should have discovered the deception.

Accordingly, we hold that Midland-Ross was not entitled to judgment as a matter of law and reverse and remand for trial.

Normally, these conclusions would be sufficient to resolve the appeal before us. However, because the case has not yet been heard on its merits and because extensive delay of further appeals can be particularly prejudicial in this type of case, further comment is appropriate.

## I.

Notwithstanding our holding to the contrary in *Morelock v. NCR Corp.*, 546 F.2d 682 (6th Cir. 1976), *vacated and remanded*, 435 U.S. 911, 98 S.Ct. 1463, 55 L.Ed.2d 503 (1978), the Supreme Court has recently recognized a general statutory right to trial by jury for suits under the ADEA. *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). *Lorillard* does not, however, indicate the scope of the jury's fact-finding role under the Act, and our research has not disclosed any ADEA case addressing whether the issue of an equitable estoppel or suspension of the statute of limita-

tions is triable to the jury.[5] Nor have we discovered a case involving this question under the Portal-to-Portal Act, the limitations period of which is borrowed by the ADEA. 29 U.S.C. § 626(e).

■ It is well established that the equitable tolling doctrine "is read into every federal statute of limitation," *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946), even where the suit is an action at law for money damages, as here. *See Glus, supra*, 359 U.S. at 235, 79 S.Ct. 760. As in *Ott I*, 523 F.2d at 1368–69, we again find guidance in *Dice v. Akron, Canton & Youngstown R. R. Co.*, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952), in which the Supreme Court held that the jury should resolve the plaintiff's claim that he was fraudulently induced to forego suit under the FELA. We consider the consultation agreement in the instant case to be analytically similar to the release in *Dice*[6] and hold that the jury should resolve whether it constituted a wrongful inducement for Ott to forego his rights under the ADEA.[7]

Our conclusion is strengthened by the Fourth Circuit's opinions in *Scarborough v. Atlantic Coast Line R. R. Co.*, 190 F.2d 935 (4th Cir. 1951) (*Scarborough II*),[8] *appeal after remand*, 202 F.2d 84 (4th Cir. 1953) (*Scarborough III*). In *Scarborough*, as here, the plaintiff sought to interpose his reliance upon the defendant's misrepresentations to avoid the bar of the statute of limitations, and the court held that the fac-

---

5. The Congress recently placed its imprimatur on the *Lorillard* decision by codifying the right to jury trial in ADEA actions. Our recognition of that right as it pertains to resolution of the factual issues discussed herein is fortified by the language chosen by the legislature in enacting the Age Discrimination in Employment Act Amendments of 1978, which provide in part: "a person shall be entitled to a trial by jury of *any* issue of fact in any such action for recovery of amounts owing as a result of a violation of this Act, regardless of whether equitable relief is sought by any party in such action." Pub.L.No.95–256, § 4, 92 Stat. 190 (1978) (emphasis added) [to be codified as 29 U.S.C. § 626(c)(2)].

6. The consultation agreement itself does not in its language speak of release. Nevertheless, both parties agree in the pleadings and Ott's own testimony confirms his understanding that the agreement was intended to act as a full substitute for and release of any cause of action which Ott might have under the Age Act.

7. It follows that if state courts may be compelled to try the issue of a fraudulent release to a jury despite state practice to the contrary, as in *Dice*, there seems little doubt about the mode of trial for a comparable issue in federal court for a federal cause of action.

8. Cited with approval in *Glus, supra*, 359 U.S. at 235, 79 S.Ct. 760.

tual issues in question should be squarely left for the jury under proper instructions. *Scarborough III*, 202 F.2d at 86. *See also Johns Hopkins University v. Hutton*, 422 F.2d 1124, 1131 (4th Cir. 1970), *appeal after remand*, 488 F.2d 912 (4th Cir. 1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974).

■ Where the predominant issues in a suit are triable to a jury, as in an ADEA action, federal law looks with disfavor upon fragmenting a portion of the case for trial to the court. *Dice, supra*, 342 U.S. at 363, 72 S.Ct. 312; *See* 19 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2311 (1971); 5 Moore's Federal Practice ¶ 38.20 at 180 (2d ed. 1978). There is no valid reason, in our judgment, for a contrary rule here.

In the context of the instant case, submission of the entire case to the jury is particularly appropriate. On the merits of the ADEA claim the jury must determine the defendant's motives for terminating Ott. On the issue of wrongful inducement, the good faith of Midland-Ross in offering the consultation agreement is in question. Both factual disputes call for a resolution of credibility and are pieces of the larger mosaic of defendant's treatment of Ott. We, therefore, conclude that the jury should decide when and whether the defendant's acts in securing the consultation agreement effected a tolling or suspension of the statute of limitations and when and whether Ott discovered or, in the exercise of reasonable diligence, should have discovered that he had been wrongfully induced. *Johns Hopkins University, supra*, 422 F.2d at 1131.

## II.

There remains the question of the legal standards to be applied by the jury to the facts which it might find to exist in this case.

As noted above, Ott's claim under the ADEA accrued upon his termination, January 4, 1971. Absent a tolling of the three-

year limitations period, Ott's complaint, filed August 22, 1974, would be untimely.

It should also be remembered that this case does not involve a defendant's concealment impeding the plaintiff's discovery of his claim, nor does it involve a cause of action which by its very nature conceals itself. *Compare, e.g., Gaudin v. KDI Corp.*, 576 F.2d 708, 713 (6th Cir. 1978); *Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364, 375 (7th Cir.), *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974), and cases cited therein. By his discharge, Ott knew that he had a potential cause of action under the Age Act. Cases involving concealment or causes of action which cannot be discovered by the exercise of due diligence are, therefore, instructive only to the extent that they provide general guidance in the application of equitable principles.

■ A wrongful inducement, that which is claimed here, is not confined solely to fraud in the traditional sense, *Bergeron v. Mansour*, 152 F.2d 27, 30 (1st Cir. 1945), and has even been held to exist where the perpetrator has made misrepresentations in good faith. *See Scarborough III*, 202 F.2d at 86–87.[9] Rather, its application is responsive to the particular circumstances, to achieve the equitable aim identified in *Glus* and cited by us in *Ott I* that "no man may take advantage of his own wrong." *Glus, supra*, 359 U.S. at 232, 79 S.Ct. at 762; *Ott I, supra*, 523 F.2d at 1370. While we doubt that the alleged claims of misrepresentation, if believed by the jury, could be regarded as having been made in good faith, the law does not require a person who seeks an estoppel to prove bad faith. *Scarborough III*, 202 F.2d at 86–87. If the defendant made a misrepresentation of material fact for the purpose of inducing a plaintiff to delay suit or release him from liability, it is estopped to plead the statute of limitations or to interpose the release as a bar to suit, provided the plaintiff has acted in justifiable reliance upon the misrepresentation. It is unnecessary for the misrepresen-

---

**9.** In submitting the issue to the jury, the district court should be mindful to avoid repeating the error which led the Fourth Circuit to reverse in *Scarborough III*.

tation to have been made negligently or fraudulently. *Scarborough III, supra*; Restatement of Contracts § 476(1) (1932) cited in *Ott I*, 523 F.2d at 1368; *see* Restatement of Torts (Second) § 552C (1977).

■ The law generally recognizes that misrepresentation in the procurement of a contract renders the agreement voidable by one induced thereby, irrespective of the culpability of the person making the misrepresentation. Restatement of Contracts § 476(1) (1932) & Comment b thereto ("Innocent material misrepresentation though not accompanied by negligence has the same effect as fraud in rendering a contract or discharge voidable."); *Scarborough III*, 202 F.2d at 86–87; *cf. Callen v. Pennsylvania R. R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948) (mutual mistake). If, therefore, Midland-Ross' misrepresentation would give Ott the option to void the consultation agreement, we see no reason in law or in good conscience why the defendant should be permitted to avail itself of the statute of limitations where its conduct is responsible for the lapse. It follows that there is even less reason if the jury finds that the agreement was procured through outright fraud, a conclusion which we find to be permissible under the facts adduced by Ott here.[10]

■ Since the heart of the law is the delay induced by the conduct complained of, and the avoidance of its prejudicial impact upon the person aggrieved, it is necessary therefore for the trier of fact to determine when the fraud or misrepresentation began adversely to affect the aggrieved party and, at the other end, if and when it ceased. As we noted in *Ott I*, the latter date is fixed by a determination of when the plaintiff discovered or should have discovered "the actions of the defendant that induced him to delay filing suit." 523 F.2d at 1370. In the factual context here, the jury must resolve when Ott knew or should have known that he was the victim of misrepresentation or fraud. *Cf., e. g., Gaudin v. KDI, supra*, 576

F.2d at 712 (statute of limitations in securities fraud case begins to run when the fraud is or should have been discovered). After this actual or constructive discovery date, the defendant is no longer accountable for the delay, and the plaintiff reassumes responsibility for filing in a timely manner.

We held in *Ott I* that the plaintiff had a "reasonable time" after discovery in which to bring suit. 523 F.2d at 1370. It appears to have been the trial court's view that since Ott had waited more than two years after what it conceived to be the discovery date before starting suit, he was as a matter of law barred, since it could find no instances in which a delay for that period of time had not been held fatal.

On the other hand, Ott has urged that he should have at least the full period of limitations after the discovery date in which to commence suit. This suggestion, of course, would forgive that portion of the limitations period which otherwise would have run between the accrual of the claim and the onset of the lulling occasioned by defendant's fraud or misrepresentation, and would thus provide a fresh start of the limitations period. We cannot agree. The authorities cited by Ott in this respect, *e. g., Hochfelder v. Midwest Stock Exchange, supra*, involve causes of action which are concealed or which cannot, with the exercise of reasonable diligence, be discovered. Here Ott was aware of his potential ADEA claim from the start, but was induced not to file by fraud or misrepresentation after the limitations period commenced.

An alternative view of the plaintiff is that a defendant who has fraudulently induced a plaintiff to forego his right of action is permanently estopped from asserting the statute of limitations which he persuaded that party to ignore. Under this theory only a doctrine of laches would bar the latter's suit, with the defendant bearing the burden of proving unreasonable delay and actual prejudice. Since we deal with equitable principles, this argument is not

---

10. As noted in *Ott I*, we apply federal law to determine whether the conduct of Midland-Ross suspended the operation of the statute of limitations. *See* 523 F.2d at 1369. *Accord, e. g., Holmberg, supra*, 327 U.S. at 397, 66 S.Ct. 582.

without force. Its fundamental flaw, however, is that it invites us to overlook altogether the statutory period established by the Congress in age discrimination suits. It is, of course, true that statutes of limitations generally bar claims irrespective of the presence or absence of actual prejudice to the defendant.

■ We generally adhere, as did the district judge, to the equitable standard of a reasonable time measured from the discovery date, *Ott I*, 523 F.2d at 1370, but believe that where relief from the statute of limitations is sought on the basis of fraud or misrepresentation, reference to the applicable limitations period established by the Congress provides a reliable and consistent statutory determination of reasonableness. In view of the equitable nature of relief from the statute of limitations, *e. g., Glus, supra*, 359 U.S. at 235, 79 S.Ct. 760, we act consistently with those cases which hold, in an equitable action, that the doctrine of laches incorporates the comparable statutory period of limitations for actions at law. *E. g., General Electric Co. v. Sciaky Bros., Inc.*, 304 F.2d 724, 727 (6th Cir. 1962). *See also Madison v. Wood*, 410 F.2d 564, 567–68 (6th Cir. 1969); *Wirtz v. Chase*, 400 F.2d 665, 668–70 (6th Cir. 1968) (explaining and applying the maxim, "equity follows the law," with reference to the statute of limitations). In explaining the relationship between equity and statutes of limitations, the Supreme Court noted in *Holmberg, supra*:

> Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that "laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." *Galliher v. Cadwell*, 145 U.S. 368, 373, [12 S.Ct. 873, 875, 36 L.Ed. 738]; see *Southern Pacific Co. v. Bogert*, 250 U.S. 483, 488–89, [39 S.Ct. 533, 536, 63 L.Ed. 1099]. And so, a suit in equity may

lie though a comparable cause of action at law would be barred. If want of due diligence by the plaintiff may make it unfair to pursue the defendant, fraudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time.

327 U.S. at 396, 66 S.Ct. at 584–585.

The Congress in its wisdom has determined that, in age discrimination cases, a reasonable time in which a person aggrieved should commence a suit for willful violations of the Act is three years from and after the accrual of his cause of action. It offends our sense of fairness that the employer could by artifice or misrepresentation deprive an employee of the full amount of time allowed him by law in which to consider and act upon his claim. Accordingly, we hold that Ott was at least entitled to the full amount of time allowed by Congress for the commencement of his action, undiminished by any period of time in which it might appear that he was unlawfully induced to forego commencing his action by the unfair and inequitable conduct of Midland-Ross. In other words, if the jury finds that Ott was wrongfully led to forego his right to commence suit, it should compute the period of time within which Ott was thus deceived, and that time should not be charged against the three years allowed Ott for the commencement of his suit after his right to do so accrued on January 4, 1971. If, therefore, the three-year period, undiminished by any period of deception, had not expired by the time Ott commenced his suit on August 22, 1974, then Ott's suit was timely brought and the jury ought to proceed to determine the age claim on the merits. On the other hand, if the three-year period, so computed, had expired by that date, the claim would be at an end and the jury should return a verdict for the defendant on the age discrimination count.[11]

11. It was entirely proper for the employer to have sought in good faith to rehire Ott as a consultant and thereby resolve its liability under the ADEA if it, in fact, intended to honor

By way of illustration it may be that the jury will find that the consultation agreement was entered into by the parties in good faith and that the later failure of Midland-Ross to afford Ott consulting opportunities was a normal risk which the parties anticipated when the agreement was signed. If the agreement is not found to be the product of misrepresentation or the result of a calculated scheme to deprive him of his right of action under the Age Act, the three-year period would not have been interrupted and the age suit would be time-barred.[12]

On the other hand, also by way of illustration, the jury might find on the evidence that the company misrepresented the extent of its consulting requirements or wrongfully calculated to induce Ott to forego suit, and without a good faith intent to provide him with consultation opportunities. In that case, the jury might find that the period of deception commenced on October 7, 1971, the date the consultation agreement was signed, or on some earlier date during the course of negotiations when the defendant's wrongful conduct effectively induced Ott to sleep on his rights. Likewise, in determining when Ott discovered or should have discovered that he had been duped, the jury might conclude, as did the district judge, that Ott's receipt of the July 25, 1972 letter was the event that ended the period of his actual or reasonable deception. Again, however, the jury might, based upon its view of the totality of the evidence, find that some other event, or culmination of events, properly marked the end of the delusion.[13]

These issues are, we think, factual ones uniquely suitable for the jury's resolution under proper instructions.

■ In this regard we conceive that the burden of proof is upon Ott to establish by a preponderance of evidence those facts which are necessary to avoid the statute of limitations. *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 233 (6th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974); *see Callen, supra*, 332 U.S. at 629–30, 68 S.Ct. 296. If he fails to so persuade the jury, then it should be instructed to return a verdict in favor of the company on the age discrimination count because, as a matter of law, the claim would be barred by the applicable three-year statute of limitations.

The district court also dismissed Ott's pendent state claim for breach of contract, concluding that "[i]f the federal claim is barred by the statute of limitations the

the agreement and if, in fact, the agreement was not tainted by misrepresentation. And it is, of course, the claim of the defendant that it intended to engage plaintiff as a consultant but that later changes in its requirements did not make such employment feasible.

If, in fact, the contract was merely breached and not voidable and if it operated to release Midland-Ross from liability under the Act, Ott's age discrimination claim is barred and he is limited to an action for breach of contract.

12. While we hold that plaintiff has the remaining unexpired period of the statute of limitations in which to have filed suit, measured from the date on which the jury determines he knew or should have known of the deception, this period represents the minimum time available for such filing. We hold that in a proper case, a plaintiff may be permitted to prove that the remaining unexpired period was not a "reasonable time" in which to bring suit. *Ott I*, 523 F.2d at 1370. Such a circumstance may arise in the context of eleventh hour inducements, on the eve of the expiration of the limitations period.

13. The plaintiff here was obligated to exercise such diligence for the protection of his own rights as a reasonable and prudent person would have exercised under the same or similar circumstances. Thus he might not blindly refuse to recognize the facts if to a reasonable person, it would have been apparent that defendant was fraudulently delaying him or had made misrepresentations which induced him to enter the contract. In this respect, however, the jury should take into account the full relationship between the parties and the conduct of the defendant itself in determining whether the reassurances of the defendant, if made, would have induced a reasonable employee to have relied upon those assurances in expectation of a good faith performance. Ott was not obligated to assume that the assurances of the defendant were misrepresentations of fact or fraudulent, at least until such time as it would have so appeared to a reasonable person in the same situation as the plaintiff given his age, experience and intelligence.

pendent claim must be dismissed." In view of our reinstatement of the ADEA claim, it is apparent that the court's resolution of the pendent claim rested on an erroneous legal premise and thus constitutes an abuse of discretion. We, therefore, reverse the dismissal of the state claim as well.

Reversed and remanded for trial consistent with this opinion.