Helen **SALAZAR**, Plaintiff,

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY** and **Larry Bell**, Defendants.

No. 88–1043.

United States District Court, S.D. Florida, Miami Division.

May 30, 1989.

**352**

Charles H. Sinclair, Lanza, O'Connor, Armstrong, Sinclair, & Turnstall, P.A., Coral Gables, Fla., for plaintiff.

Peter W. Zinober, Charles Burr, Zinober & Burr, Tampa, Fla., for defendants.

## ORDER GRANTING
## SUMMARY JUDGMENT

NESBITT, District Judge.

This cause is before the Court upon the motion of Defendants American Telephone and Telegraph Company ("AT & T") and Larry Bell for summary judgment.

## I. BACKGROUND

This is an age discrimination action brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), to which there is joined a pendent state law claim for intentional infliction of emotional distress. The Plaintiff, Helen Salazar, was employed by AT & T as an account executive in its Miami branch. Salazar alleges that she was a victim of age discrimination during a workforce reduction that affected AT & T's Miami branch in late 1986. In connection with that workforce reduction, Salazar signed an election form indicating a desire to participate in a voluntary severance program. As a participant in the severance program, Salazar received an incentive payment in January 1987 equal to one year's compensation. Salazar alleges that her participation in the severance program was not voluntary. Salazar asserts that the employment alternatives with which she was presented by AT & T at the time of

signing her election form rendered her choice coercive.

Salazar began working for Southern Bell in 1960. In January 1983, Salazar transferred to AT & T Information Systems in Miami. In 1985, Salazar assumed the position of account executive in the Miami Branch, a job position she retained until the time of her separation from the company.

During 1986, AT & T experienced a series of nation-wide workforce reductions. On November 3, 1986, Salazar was asked to attend a meeting with Defendant Bell, the branch manager in Miami, and Clyde Baker, the sales manager. During that meeting, Bell told Salazar that, due to downsizing constraints and her past job performance, he did not intend to offer her a position as an account executive in Miami in 1987. Bell then gave Salazar three choices: (1) she could resign; (2) she could be terminated; or (3) she could attempt to find another job position within AT & T. Bell told Salazar that he would assist in trying to arrange for her transfer to another job position.

Salazar told Bell that she would not resign, but that she would consider transferring to another job position, either within or outside the Miami area. Later, Baker gave Salazar a list of AT & T jobs that were available throughout the United States and asked her to prepare a transfer form. Salazar later prepared a transfer form and returned it to Baker.

Shortly after receiving a Transition Protection Payment Plan package, which offered a severance incentive payment, Salazar consulted with a Miami attorney, Harold Rifas, about her employment status. Eventually, Salazar decided to accept the severance incentive payment offered under the Transition Protection Payment Plan. On January 15, 1987, Salazar filled out and signed an election form evidencing her intent to participate in the plan. Salazar marked a box on the election form which stated that "I voluntarily and irrevocably offer to leave the payroll by [date to be filled in by Company] with AT & T Transition Protection Payment Plan benefits." At the time of making her election to participate in the program and receive the severance incentive payment, Salazar was represented by Rifas.

Salazar's last day of performing her regular job duties at AT & T was February 3, 1987. Thereafter, she was placed on medical disability leave for approximately seven weeks. Salazar was officially removed from AT & T's payroll on March 31, 1987. Based on her length of service with the company, Salazar received a severance incentive payment equal to one year's compensation, or $40,611.00.

On July 31, 1987, Rifas wrote a demand letter to AT & T on behalf of Salazar. In response to the demand letter, Rifas was contacted by AT & T staff attorney Joseph Ippolito. Thereafter, Rifas and Ippolito had telephone discussions over the course of the next five months concerning the possible settlement of Salazar's claim.

When further settlement discussions appeared fruitless, Rifas advised Salazar to contact the EEOC. Salazar telephoned the EEOC's office in Miami on January 25, 1988 and told an unidentified representative that she wanted to pursue an age discrimination claim. Salazar was advised by the representative that she could file a written charge at a later date. Salazar filed a formal Charge of Discrimination at the EEOC office in Miami on February 10, 1988.

## II. DISCUSSION

In order to file a civil action under the ADEA, a plaintiff in Florida, a deferral state, must file an administrative charge with the EEOC within 300 days after the alleged employment practice occurred. *McClinton v. Alabama By–Products Corp.*, 743 F.2d 1483 (11th Cir.1984). This filing requirement is in the nature of a statute of limitations. 29 U.S.C. § 626(d)(1); *McClinton*, 743 F.2d at 1485.

In the case at bar, Plaintiff's EEOC charge was not filed within the requisite 300 days. Plaintiff received unequivocal notice on November 3, 1986 that her employment with AT & T would be affected adversely by the workforce reduction.

Plaintiff's EEOC charge, filed on February 10, 1988, far exceeded the limitations period.

Plaintiff argues that the 300–day period did not begin to run until she was removed from AT & T's payroll on March 31, 1987. However, "[t]he proper focus for purposes of establishing the time at which the limitations period begins to run 'is on the time of the *discriminatory act,* not the point at which the *consequences* of the act became painful.'" *Calhoun v. Federal National Mortgage Assn.,* 823 F.2d 451, 455 (11th Cir.1987) (quoting *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981)) (emphasis in original). Therefore, the 300–day limitation period commenced on November 3, 1986, the date Plaintiff was notified that she would not be offered an account executive position in 1987.

■ Plaintiff next argues that her telephone call to the EEOC's Miami office on January 25, 1988 constituted a legally sufficient filing of her administrative charge. However, because this Court finds that the 300–day period commenced on November 3, 1986, it need not consider the legal effect of Plaintiff's phone call, since the call occurred more than 300 days after the accrual date. However, assuming *arguendo* that the proper accrual date was the date Plaintiff was removed from the payroll (March 31, 1987), Plaintiff's notice would still be insufficient since the ADEA requires a *written* charge to be filed with the EEOC. *Greene v. Whirlpool Corp.,* 708 F.2d 128, 130 (4th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984); *Michelson v. Exxon Research and Engineering Co.,* 808 F.2d 1005, 1009–10 (3d Cir.1987); *Woodward v. Western Union Telegraph Co.,* 650 F.2d 592, 594 (5th Cir.1981).

■ Plaintiff next contends that the 300–day period should commence on July 25, 1987, the day she and her attorney reviewed AT & T documents. The Court disagrees. One, Plaintiff admitted in her deposition that each of the aforementioned documents had been in her possession before she left AT & T. And two, Plaintiff's actual knowledge of the alleged discrimina-

tion is not required to commence the 300–day period. *See McClinton,* 743 F.2d at 1486 ("Where an employee is generally aware of his rights, ignorance of specific legal rights or failure to seek legal advice should not toll the notification period.").

Plaintiff asserts in the alternative that, even if her EEOC charge was untimely, the doctrines of equitable tolling and equitable estoppel should preclude AT & T from asserting a limitations-period defense. Each contention will be addressed separately.

■ The test for equitable tolling was set forth in *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 930 (5th Cir.1975): "[T]he statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Plaintiff testified that she was advised by Bell on November 3, 1986 that she would not be offered an account executive position. Further, she: (1) was told shortly thereafter that the decision was made partly on the basis of subjective considerations; (2) learned that another account executive more than 40 years old would also not be given an account executive position in 1987; (3) had knowledge of the appropriate enforcement procedures pursuant to the ADEA, which were found in AT & T's booklet which she said she carefully read and understood; and (4) retained and was represented by an attorney. *See Morse v. Daily Press, Inc.,* 826 F.2d 1351, 1353 (4th Cir.1987) (a plaintiff's retaining of an attorney "extinguishes the equitable reasons for tolling" under the ADEA). It is undisputed that Plaintiff retained counsel, and that actual knowledge of the alleged discrimination was acquired, *before* the expiration of the 300–day limitations period, even accepting Plaintiff's assertion that she did not retain her attorney until July 25, 1987. Accordingly, in light of the foregoing factors, the Court finds that it is inappropriate to allow Plaintiff to invoke the doctrine of equitable tolling.

■ Plaintiff's final argument in an attempt to circumvent her untimely charge is

that Defendant's deliberate actions caused her to delay filing her charge. To invoke the doctrine of equitable estoppel, Plaintiff must prove that her inaction was "the consequence of either a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982). Further, the employer's "conduct or representations [must be] directed to the very point of obtaining the delay of which [it] seeks to take advantage." *Kazanzas v. Walt Disney World Co.,* 704 F.2d 1527, 1532 (11th Cir.), *cert. denied,* 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983), (quoting 51 Am.Jur.2d § 438 at 904).

■ Plaintiff asserts that the settlement discussions between her attorney and AT & T's staff attorney should estop Defendants from raising the limitations-period defense. However, it is undisputed that AT & T's staff attorney never told Plaintiff's attorney that it was not necessary for Plaintiff to file an EEOC charge. Further, AT & T's attorney never told Plaintiff's attorney that AT & T would definitely settle Plaintiff's claim. Thus, this case differs markedly from those in which agents of employers affirmatively represented to employees that they would be rehired or that their claims would be settled. *See Ott v. Midland Ross Corp.,* 600 F.2d 24 (6th Cir. 1979); *Coke v. General Adjustment Bureau,* 640 F.2d 584 (5th Cir.1981) (en banc). In short, the record is devoid of any evidence that AT & T's staff attorney intended to "lull" or "lure" Plaintiff and her attorney into missing the 300–day limitations period.

■ In sum, the Court finds that, as to Count I of the complaint (age discrimination), Plaintiff did not file a charge with the EEOC within the required 300 days after the alleged unlawful employment practice occurred, and, therefore, that claim is barred.[1] Accordingly, in light of the foregoing, it is

ORDERED and ADJUDGED that:

(1) Defendants' motion for summary judgment as to Count I is GRANTED;

(2) Defendants' motion for summary judgment as to Count II and III (intentional infliction of emotional distress) is DENIED without prejudice. The Court declines to exercise pendent jurisdiction over these remaining state claims.

(3) Defendants' motion for separate trials is DENIED as MOOT.

A separate Final Judgment will be entered this date.

DONE and ORDERED in chambers, Miami, Florida, this 22nd day of May, 1989.

---

1. The Court also finds that, assuming *arguendo* that Plaintiff did timely file her charge with the EEOC, Plaintiff's Count I fails since she voluntarily resigned from her employment with AT & T. One of the elements necessary to establish a prima facie case of discrimination under the ADEA is that the plaintiff was discharged. Plaintiff testified that she was "forced" and "intimidated" into requesting her participation in the Transition Protection Payment Plan. The Court finds no evidence supporting the inference that Plaintiff was constructively discharged. *See, e.g., Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982) (Plaintiff "produced no evidence other than his 'conclusory allegations' to rebut the persuasive evidence of the voluntariness of his actions."). Therefore, the Court finds that Plaintiff's participation in AT & T's workforce reduction plan was voluntary as a matter of law.