Harry W. **SCHELLER**

v.

**HYDROTHERM, INC.**

Civ. No. K–89–49.

United States District Court,
D. Maryland.

Nov. 21, 1989.

Howard J. Fezell, Stevensville, Md., for plaintiff.

Frank L. Kollman, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Senior District Judge.

This is an action filed by plaintiff, Henry M. Scheller, against his former employer, Hydrotherm, Inc., alleging violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.* Following discovery, defendant moved for summary judgment. For the reasons stated in this opinion, that motion will be granted.

## BACKGROUND

Plaintiff was employed by defendant at its Dundalk, Maryland, facility as a manufacturing engineering manager from 1982 until approximately December 1986. On or before December 15, 1986, plaintiff, then 47 years old, was told that he would be terminated effective January 12, 1987, because economic conditions in the company necessitated abolishment of his position as part of an effort to streamline operations. Plaintiff left defendant's employ on January 12, 1987. In May 1987, plaintiff filed a timely charge of age discrimination with the federal Equal Employment Opportunity Commission (EEOC). The EEOC found no evidence of age discrimination. Thereafter, plaintiff filed the within action, alleging violation of 29 U.S.C. § 623(a)(1) which makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." The primary factual basis for plaintiff's said contention is that, after plaintiff was informed of the abolishment of his position and had left the company on January 12, 1987, another employee, James Gatcomb, age 30, was promoted into plaintiff's job and given a pay raise.

At the time plaintiff left defendant's employ, he had been Gatcomb's immediate supervisor.

Defendant contends that age played no part in its decision to terminate plaintiff, as evidenced in part by the continued employment of others at its Dundalk plant who were the same age or older than plaintiff. According to defendant, the selection of plaintiff as one of the employees to be terminated was based on a variety of legitimate factors. For one thing, the company believed that Gatcomb no longer needed plaintiff's supervision and could assume additional responsibilities. Further, by increasing the workload of several other employees, who, in the company's view, possessed more unique abilities than plaintiff, defendant was able to terminate a nonessential employee and to achieve a desired budget cut. However, defendant asserts that the merits of this case should not be reached by this Court because (1) plaintiff did not, as he was required to do under the ADEA, file a charge of discrimination with an appropriate state agency prior to filing a federal suit, and (2) in any event, plaintiff's complaint in this case is time-barred by limitations.

### STATE FILING REQUIREMENTS UNDER ADEA

■ Section 14(b) of the ADEA, 29 U.S.C. § 633(b), states:

In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided,* That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

Maryland has a law prohibiting discrimination in employment because of age [1] and has created the Maryland Human Relations Commission (MHRC) to handle complaints of discriminatory practices. Md.Ann.Code art. 49B, § 9(a) provides in relevant part:

(a) Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission (hereinafter referred to as the "Commission") a complaint in writing under oath. The complaint shall state the name and address of the person, firm, association, partnership, corporation, State agency, department or board alleged to have committed the act of discrimination together with the particulars thereof; and the complaint also shall contain such other information as may be required from time to time by the Commission. A complaint must be filed within six months from the date of the occurrence alleged to be a violation of this article. A complaint filed with the federal or with a local human relations commission within six months from the date of occurrence shall be deemed to have complied with the provisions of this section.

Plaintiff argues that under the last sentence of that state statutory section, the filing of a complaint with the EEOC relieves a person such as plaintiff from being required to resort to the Maryland Human Relations Commission prior to filing suit in federal court. Defendant takes the position that the last sentence means that timely filing with the EEOC or a local organization satisfies the state filing deadline, only if a complaint is also filed with the MHRC.

---

1. Md.Ann.Code art. 49B, § 16(b) (1986 Repl. Vol.).

Those two different approaches raise the question of whether, under *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), Maryland may voluntarily grant to a complainant under the ADEA the option to proceed via either a federal or a state channel when Maryland has such a channel in existence, and, if so, whether by enacting article 49B, section 9(a) Maryland has made that choice with sufficient clarity and specificity.

In *Oscar Mayer*, Justice Brennan interpreted section 14(b) of the ADEA as requiring a complainant to file with an appropriate state agency prior to instituting an action in federal court. 441 U.S. at 756, 99 S.Ct. at 2071. Justice Brennan expressed the view that the intent of section 14(b) was "to screen from the federal courts those discrimination complaints that might be" better and more quickly settled in state proceedings. *Id.* The message that is apparent in *Oscar Mayer* is that Congress, in the ADEA legislation, intended to encourage states to establish a system to handle employment discrimination complaints. Maryland has done so and the doors of the MHRC are open to a complainant such as plaintiff.

*Oscar Mayer* does not specifically answer the question of how the existence of a worksharing agreement between the EEOC and the MHRC affects, if at all, the need for a state filing. Nor do other cases in which worksharing arrangements between the EEOC and state agencies have been involved. *See, e.g., EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988); *Dixon v. Westinghouse Electric Corp.*, 857 F.2d 945 (4th Cir.1988); *EEOC v. Hansa Products, Inc.*, 844 F.2d 191 (4th Cir.1988).

In *Hansa Products, Inc.*, the Fourth Circuit considered state filing requirements in Maryland under Title VII and stated:

Filing with the EEOC within the 180-day period, without more, will not preserve a federal right of action for discriminatory acts committed in a deferral state. A claimant in a deferral state

must file with the state agency, either personally or in some circumstances the EEOC will refer the charge to the state agency on the claimant's behalf. However, where the state deferral agency, under a worksharing agreement, has waived its right to process charges first filed with the EEOC, the claimant must personally file with the state agency in order to take advantage of the extended 300-day rule.

844 F.2d at 192-93 n. 5 (citation omitted).

The Fourth Circuit addressed the requirements of *Oscar Mayer* as applied in a deferral state [2] in *Cornett v. AVCO Financial Services*, 792 F.2d 447 (4th Cir.1986). In *Cornett*, the plaintiff filed a charge of age discrimination with the United States Labor Department which transferred the complaint to the EEOC. Various EEOC offices subsequently routed the complaint to Philadelphia and then Los Angeles. Cornett's complaint was never referred to the West Virginia Human Rights Commission as it apparently should have been. Judge Phillips, affirming the district court, held that Cornett should have filed with the appropriate West Virginia agency and, having not done so, was time-barred from instituting a federal claim. Since Cornett's failure to do so was a result of his own inaction, Judge Phillips stated that to relieve Cornett of his obligation would "fly in the face of one of the principal purposes of the requirement for an initial commencement of state proceedings to encourage expeditious state processing of such claims and thereby avoid the necessity of resort to federal relief." *Id.* at 450.

While the Maryland statute can be interpreted in several ways, Maryland has not specifically and clearly indicated that a complainant may bypass its state machinery and file directly with the federal EEOC. Therefore, the question of whether Maryland could specifically do so need not be answered in this case. Under the circumstances, plaintiff's within claim is barred under *Oscar Mayer*.

**2.** In a deferral state, the EEOC automatically refers a complaint filed with it to the appropri-

ate state agency for exhaustion of state remedies unless the complainant directs otherwise.

But even if this Court assumes, *arguendo*, that the Maryland worksharing agreement eliminated a need for filing with the MHRC, plaintiff's within claim is in any event barred by limitations.

## LIMITATIONS

■ ADEA actions must be commenced within two years, a period which becomes three years if the discrimination is willful. Defendant asserts that plaintiff's within complaint is time-barred because the time for filing "runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982). Thus, in this case defendant asserts that limitations began to run no later than December 15, 1986, the date by which plaintiff concedes that he was notified of his termination; and that two years had more than elapsed when plaintiff filed this suit on January 6, 1989.

Plaintiff, in response, contends that the date upon which limitations began to run is the date on which plaintiff knew of the possible age discrimination. Plaintiff claims that that date did not occur until February 1987 when plaintiff first became aware that a younger man had been appointed to a position which plaintiff had been told was being abolished. Plaintiff asserts that the statute of limitations is activated in ADEA suits "once the employee knows or should know that an unlawful employment practice has been committed." *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 593 (9th Cir.1981), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). *See also Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407 (7th Cir.1984); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975).

However, in *Felty v. Graves–Humphreys Co.*, 785 F.2d 516 (4th Cir.1986), the Fourth Circuit concluded as follows:

The decisions of the United States Supreme Court in *Chardon v. Fernandez* [454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981)] and *Delaware State College v.*

*Ricks*, [449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)], as interpreted by this Court in *Price v. Litton Business Systems, Inc.*, clearly establish that the limitation period in an ADEA action commences with the allegedly discriminatory act. [Plaintiff's] attempt to engraft a knowledge component on the *Chardon–Ricks–Price* rationale is without merit. A plaintiff's lack of knowledge of the discriminatory nature of an employment decision and the reasons for that lack of knowledge are relevant to an analysis of equitable tolling but play no part in determining the beginning of the statutory limitation period.

*Id.* at 518–19 (citations and footnote omitted). Thus, in this case, unless the three-year limitations period or the doctrines of equitable tolling or estoppel lead to a contrary result, plaintiff's within complaint is barred by limitations.

## EQUITABLE TOLLING

■ Citing *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), for the proposition that equitable tolling might exist if an employee can show that it would not have been possible for an employee acting with reasonable prudence to learn that he was discharged discriminatorily, plaintiff submits various materials to establish that he could not reasonably have known of the discriminatory nature of his termination until January or February 1987. Those materials include plaintiff's good performance evaluations prior to his termination, promotion papers for James Gatcomb—the individual whom plaintiff claims was promoted into plaintiff's position within days of plaintiff's leaving defendant's employ—and a February 1987 newspaper article announcing Gatcomb's alleged appointment to plaintiff's position. Plaintiff also relies upon the fact that he was not involved in the decision-making process which resulted in his termination and thus was excusably ignorant of the within cause of action until after January 6, 1987. Plaintiff further states that defendant misrepresented the basis for plaintiff's termi-

nation as economic necessity, a basis which plaintiff had no reason to question until January or February 1987.

■ Equitable tolling exists "where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action"; or where plaintiff has been excusably ignorant of filing requirements. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049–50 (4th Cir.1987), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988) (citations omitted). The misconduct attributed to a defendant must be such that it "prevents the plaintiff from filing his or her claim on time." *Id.* at 1049. A plaintiff must "show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *Id.* In this case, plaintiff was told by defendant that economic conditions in the company necessitated abolishment of his position as part of an effort to streamline operations. Because someone younger was given his title and his duties, plaintiff contends that he was misled and should be accorded a tolling of limitations.

Based on the record in this case, there is an insufficient factual basis to warrant application of equitable tolling. Under summary judgment law as articulated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), a plaintiff must do more than proffer conclusory assertions and theoretical possibilities. If that were not the case, every employment discrimination case in which equitable tolling or estoppel or willful discrimination is conclusively claimed would require trial. Despite the seemingly rather complete discovery which has been had in the instant case, there is little, if anything, to indicate that defendant acted willfully to mislead or to discriminate. Given the Fourth Circuit's admonition that equitable tolling and estoppel should be "sparingly applied" to the statutory limitations period, *English*, 828 F.2d at 1049, and the teaching of *Liberty Lobby* and *Celotex*, the facts of this case do not warrant application of equitable tolling or estoppel or entitle plaintiff to trial on the claim of willful discrimination by defendant.

■ Even granting, for argument's sake, that equitable considerations mandate a tolling of limitations, the question arises as to the effect of such tolling. Plaintiff maintains that application of the doctrine of equitable tolling defers the commencement of the full limitations period to the time at which the employee should have discovered the discriminatory nature of the action. The difficulty with that argument, however, is that in *Felty*, as discussed *supra*, the Fourth Circuit refused to add a knowledge requirement to the discriminatory act which sets the limitations period in motion, and stated that lack of knowledge would "play no part in determining the beginning of the statutory limitation period." 785 F.2d at 518–19. Thus it seems that any tolling would simply give a plaintiff a reasonable time after acquiring knowledge to file a complaint.

In *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527 (11th Cir.), *cert. denied*, 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983), the Court wrote that if there was sufficient time to file an ADEA complaint "after the circumstances inducing delay [had] ceased to operate," equitable tolling would have no effect on the limitations period. *Id.* at 1528, 1531 n. 4. That rule fits with the reasoning of the Fourth Circuit in both *English* and *Felty*. In the instant case, if limitations began to run in December 1986 when plaintiff was notified of his termination, the two-year statute of limitations would require filing by mid-December 1988. Plaintiff claims to have learned of the allegedly discriminatory act in February 1987 and thus had over one and a half years thereafter in which to file suit. Plaintiff's failure to do so during that time cannot be blamed on defendant.[3]

---

3. Plaintiff argues that an undated letter from the EEOC informed him that he had until January 11, 1989 to file a federal complaint under ADEA. However, a complete reading of that letter demonstrates that the EEOC was assuming the correctness of the date selected by plain-

In *Kazanzas, supra,* the Court cited to *Troutman v. Southern Railway Company,* 296 F.Supp. 963, 970 (N.D.Ga.1968), in support of its position and to *Ott v. Midland–Ross Corp.,* 600 F.2d 24 (6th Cir. 1979), for a contrary position. In *Ott,* Judge Engel stated that

> [i]t offends our sense of fairness that the employer could by artifice or misrepresentation deprive an employee of the full amount of time allowed him by law in which to consider and act upon his claim. Accordingly, we hold that Ott was at least entitled to the full amount of time allowed by Congress for the commencement of his action, undiminished by any period of time in which it might appear that he was unlawfully induced to forego commencing his action by the unfair and inequitable conduct of Midland–Ross. In other words, if the jury finds that Ott was wrongfully led to forego his right to commence suit, it should compute the period of time within which Ott was thus deceived, and that time should not be charged against the three years allowed Ott for the commencement of his suit after his right to do so accrued on January 4, 1971.

*Id.* at 33.

That analysis is apparently keyed not to equitable tolling, but rather to the concept of equitable estoppel.

## EQUITABLE ESTOPPEL

■ Equitable estoppel is based upon something wrongful done by the defendant which causes reliance by the plaintiff. *See Zografov v. Veterans Admin. Med. Center,* 779 F.2d 967, 969 (4th Cir.1985). Equitable estoppel is directed at a situation in which plaintiff is prevented from bringing suit by a well-designed scheme on the part of defendant to accomplish just that. A reading of *Kazanzas, Troutman* and *Ott,* in conjunction with consideration of *Felty* and *English,* suggests that it is only when there has been egregious wrongdoing by a defendant that a plaintiff is given the full

limitations period, after wrongful action by a defendant was ended, in which to file a complaint. We do not have that situation here. An approach pursuant to which a plaintiff will be given a reasonable period of time after learning of alleged discrimination in which to file a complaint comports with the benefits to be derived from speedy resolution of alleged employment discrimination. Undue prolongation of such disputes is not only unhealthy for the parties themselves but for society and the courts. In this case, plaintiff has not convinced this Court that there is a sufficient factual dispute with regard to the possible application of equitable estoppel so as to permit this Court to apply the views of Judge Engel in *Ott.*

## WILLFUL DISCRIMINATION

■ If, as plaintiff alleges, defendant willfully discriminated against him, plaintiff would have had until December 15, 1989 to file this suit and thus would have timely filed it on January 6, 1989. However, as indicated and developed in the discussion *supra,* there is, in this case, only a general conclusory assertion of willful discrimination supported by a suggested inference of the meaning of the promotion of James Gatcomb. In sum, that does not enable plaintiff to withstand defendant's summary judgment motion as to plaintiff's claim of willful discrimination.

## CONCLUSION

In summary, this Court concludes that plaintiff, as a matter of law, is barred from proceeding herein because plaintiff failed to file a complaint with the MHRC prior to filing a federal complaint under the ADEA, and also, in any event, because plaintiff's complaint is time-barred. Accordingly, for those two alternative reasons, defendant is entitled to summary judgment.

---

tiff for accrual of this within cause of action was an accurate one and that that letter also recommended that plaintiff seek legal assistance with regard to any federal filing. Receipt of

that letter in November 1988, as plaintiff claims, does not negate the fact that plaintiff was aware of a cause of action in February 1987.