Patricia LOPEZ

v.

**The LOUISIANA NATIONAL GUARD and Herbert R. Temple Jr., Chief of the National Guard Bureau.**

**Civ. A. No. 89–4446.**

United States District Court, E.D. Louisiana.

March 20, 1990.

---

ORDER AND REASONS

PATRICK E. CARR, District Judge.

This matter is before the Court on defendants' motion to dismiss or alternatively for summary judgment. Determining in its discretion that oral argument is unnecessary,[1] the Court CANCELS the hearing on the motion and now GRANTS the motion.

This is a federal employee Title VII case filed by Patricia Lopez, a black woman, against the Louisiana National Guard (LNG) and Herbert R. Temple Jr., Chief of the National Guard Bureau, for alleged race discrimination and reprisal actions during her employment with the LNG. The government moves to dismiss on the ground that plaintiff was inexcusably untimely in filing her formal administrative complaint.[2]

## I.

In August 1984, the LNG hired Lopez as a military personnel technician at the LNG's Jackson Barracks in New Orleans; she was a civilian employee at a grade level of GS–05. She had previously been employed at the New Orleans office of the Equal Employment Opportunity Commission (EEOC).

On Monday, February 4, 1985, she contacted Chief Warrant Officer Two Lowell D. Bradford Jr., a designated EEO counselor for the LNG at Jackson Barracks, to make an informal administrative complaint of discrimination. The following day, the LNG issued Lopez a letter terminating her effective March 7, 1985.[3]

Bernard Marcus, Ellis B. Murov, Joanne C. Ferriott, Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiff.

Glenn K. Schreiber, Asst. U.S. Atty., for defendants.

1. *Compare Wilkins v. Rogers,* 581 F.2d 399, 305 (4th Cir.1978) (cited with approval in *Gary W. v. State of Louisiana,* 601 F.2d 240, 244 (5th Cir. 1979)) (oral argument is not required for a motion to dismiss) *with Villanueva v. CNA Insurance Companies,* 868 F.2d 684, 688 (5th Cir. 1989) (same for a summary judgment motion). *See generally* F.R.Civ.P. 78; Local Rules 2.03E– 2.04E.

2. Defendants also move to dismiss the LNG on the ground that it is not a proper party to a Title VII claim. *See* cases cited below at note 34. "Plaintiff concedes that she has no right of action against the Louisiana National Guard, and thus accepts dismissal of her action as against the agency only."

3. The notice-of-termination letter specifically provides the following:

> This action is taken as a result of your performance being less than fully acceptable during your probationary period. Frequently, you have failed to meet deadlines established by your supervisor and you have failed to follow established office policies and procedures.

According to a National Guard Bureau investigator's Report of Investigation made under 29 C.F.R. § 1613.216(a), these problems primarily concerned in specific her abuse of her annual- and sick-leave and leave-without-pay.

After discussing the problem with Lopez, her supervisors, associates, and others, CWO2 Bradford was unable to resolve Lopez's informal complaint. Accordingly, on Monday, February 25, 1985, he conducted his final interview with Lopez. At that time, he gave her both oral and written notice of her right to file a formal, written administrative complaint within 15 days, or by Tuesday, March 12, 1985. The written notice reads in full:

This is notice that on the above date [February 25, 1985] the final counseling interview was held in connection with the matter you presented to the EEO Counselor.

If you believe you have been discriminated against on the basis of race, color, religion, sex, national origin, or age, you have the right to file a COMPLAINT OF DISCRIMINATION WITHIN 15 CALENDAR DAYS AFTER RECEIPT OF THIS NOTICE.

The complaint must be in writing and may be filed in person or by mail with the Director of Equal Employment Opportunity, 600 South Street, New Orleans, Louisiana, or any of the following officials authorized to receive discrimination complaints:

The Adjutant General, State of Louisiana, HQ Building, Jackson Barracks . . .

The State EEO Manager, ATTN: LANG–DMM–HR, Jackson Barracks . . .

The Federal Women's Program Coordinator, LANG–DMM, Jackson Barracks . . .

The Espanic [sic] Program Coordinator, LANG–DMM–HR, Jackson Barracks . . . [4]

According to CWO2 Bradford,[5] he obtained the address for the EEO Director from the New Orleans telephone directory. The address in the notice was, as all now agree, incorrect: the address given was the address for the local *EEOC* office, and not the National Guard Bureau's EEO Director.

Eight days later, on March 5, 1985, Lopez tendered in person a formal, written administrative complaint at the New Orleans EEOC office. On March 12, 1985, Antonio Carbonell, an Attorney Examiner at the New Orleans EEOC office, returned her complaint under a cover letter sent by certified mail, return receipt requested; Lopez received this mail on March 14, 1985. A copy of the cover letter is not in the record, and its contents are in dispute: on the one hand, the government contends the letter (a) advised Lopez that resort to the EEOC was premature and (b) "instructed [her] to file her complaint with the LNG officials" at Jackson Barracks listed on CWO2 Bradford's notice of final interview; on the other hand, Lopez contends that the letter stated "that she was required to file with one of the persons listed in the EEO counselor's letter," including "the Director of the EEOC [sic] in New Orleans." Restated, the parties dispute whether or not Carbonell, like CWO2 Bradford before him, advised Lopez that a proper recipient of her formal administrative complaint was "the Director of Equal Employment Opportunity, 600 South Street, New Orleans."

On Thursday, March 14, 1985, Lopez attempted to re-file her formal administrative complaint with the New Orleans EEOC office; specifically, she mailed the complaint under a cover letter which is addressed to

4. As CWO2 Bradford stated in his declaration, the notice follows the format set forth in U.S. Civil Service Commission, *Equal Employment Opportunity Counseling: A Guidebook* app. E, at 24 (Personnel Methods Series No. 19 rev. Oct. 1975). The abbreviation LANG–DMM stands for Louisiana Army National Guard—Director, Manpower Management.

5. Lopez implies that CWO2 Bradford's unsworn declaration attached to the government's motion is improper under F.R.Civ.P. 56(e) because it is not in affidavit form. *See* Plaintiff's List of Material Facts at 3 n. 1. The implication is meritless, for the declaration made under penalty of perjury satisfies the requirements of 28 U.S.C. § 1746(2). *United States v. 225 Cartons,* 871 F.2d 409, 414 n. 4 (3d Cir.1989); *see Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir.1988). *Compare Carter v. Clark,* 616 F.2d 228, 229 (5th Cir.1980) *with Pfeil v. Rogers,* 757 F.2d 850, 858–59 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

the director of that office and reads in pertinent part:

Please find enclosed my EEO Complaint that I filed at your office on March 5, 1985, which was returned to me by Mr. A. Carbonell.

Also find enclosed the cover letter Mr. Carbonell sent to me stating that I have to file my complaint with one of the officials listed on the letter from the EEO Counselor who investigated my complaint at Jackson Barracks. Note that if Mr. Carbonell had read the letter completely, he would have discovered that the first place listed for me to file my complaint is EEOC (your agency). This is stated in the last paragraph of the letter which is underlined.

Please turn my complaint over to Ms. Mary Cleland for processing. Also note that my complaint was timely filed and due to the error of Mr. Carbonell, I am returning it.

Mary Cleland is another Attorney Examiner at the New Orleans EEOC office.

"Several days later," Lopez received a form letter dated March 13, 1985 from Mattie Horton, an Intake Equal Opportunity Specialist at the New Orleans EEOC office. This letter, which appears to be a form letter for incomplete or inadequate discrimination complaints against *private* employers, acknowledges receipt of Lopez's complaint and states in part:

The information you provided is not sufficient for filing a charge of discrimination. Additional information is needed before we can pursue this matter.

. . . .

I urge you to contact me as soon as possible because a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 to 300 days fo [sic] the alleged discrimination. ...

Sometime later, Lopez received a second form letter from Horton, this one dated March 15, 1985; this second letter states in part:

Your letter indicates that the situation you describe is not covered by the laws we administer, therefore we have no authority to handle the matter you raised.

Although we have no authority to handle the matter, the information you provided seems to indicate that another organization may be able to help you. Please contact:

Captain Pack, EEO Representative

Louisiana National Guard

Jackson Barracks

. . . .

At that time, Captain (now Major) Pack was the State Equal Employment Manager for the LNG and was CWO2 Bradford's EEO supervisor.[6] By affidavit, Lopez states that she "does not recall whether she received this second letter from Horton on March 17, 18 or shortly thereafter."[7]

In an affidavit submitted in opposition to the government's motion, Lopez states:

[Lopez] felt confused by the conflicting indications she had received, not only from Bradford and Carbonell, but with the EEOC, from Carbonell and Horton.

---

6. According to a recent declaration of and a contemporaneous "telephone or verbal conversation record" (Form DA–751 rev. Apr. 66) by Captain (now Major) Pack, he telephoned Ms. Cleland on April 2, 1985 and she "stated that the EEOC would not handle Ms. Lopez' matter until the LNG had investigated her formal administrative complaint." *See also* 29 C.F.R. § 1613.231.

Lopez received a *letter dated April 10, 1985* from Charles A. Haycraft, Deputy Director of the New Orleans EEOC office. The body of the letter states in full:

This is in response to your letter to the Director, Patricia T. Fields, dated March 14, 1985.

This office does not have jurisdiction to accept your complaint. It must be filed with your former agency. I spoke with Chief Warrant Officer Lowell D. Bradford, Jr. He confirmed that his notice of final interview dated February 22 [sic], 1985, incorrectly informed you that you could file your complaint with this office. He said that he will be in contact with you to correct the error and advise you of the proper procedure.

7. Lopez's unsworn Local Rule 2.10 statement of material facts states that she mailed her complaint to the LNG Adjutant General on the one hand on March 29, 1985 and on the other hand "within about ten days of receipt of Horton's letter dated March 15."

[Lopez] hoped to hear from [New Orleans EEOC] Director Fields clarifying her situation, but not receiving the awaited response, she decided to file her complaint with the Louisiana National Guard, which was included in the list of proper recipients. She addressed her complaint to the Adjutant General at Jackson Barracks on March 28, 1985 ...; the letter was postmarked March 29, 1985.

Under a cover letter dated March 28, 1985, in an envelope addressed to the State EEO Manager and postmarked Friday, March 29, 1985, Lopez finally forwarded her formal complaint to an LNG official, namely, the Adjutant General for the LNG, for processing. The body of the cover letter reads in full:

Please find enclosed my Complaint of Discrimination in the National Guard.

As instructed by the EEO Counselor (see letter enlosed [sic]), I originally filed my complaint with Equal Employment Opportunity Commission, 600 South Street, on March 5, 1985 (8 days after my final interview with the EEO Counselor), but through no fault of my own, I should have filed my case with you.

Therefore, I am requesting that a formal investigation be made into my case and appropriate action be taken.

The LNG received the envelope with its cover letter and complaint on Monday, April 1, 1985.[8]

Lopez's written complaint (NGB Form 713–5 rev. 15 July 76) alleges race discrimination by "CW4 Warren H. Lund, Enlisted Branch Manager" on January 29, 1985 and thereafter. The complaint states among other things: "I believe that my termination was due to my filing a discrimina-

tion complaint and not for the reasons stated on my termination notice."

On April 17, 1985, the LNG accepted Lopez's formal administrative complaint without a specific finding of timeliness.[9] The notice of acceptance merely states:

1. The purpose of this notice is to inform you that your complaint of discrimination, NGB Form 713–5, received in this office, 1 Apr 85, has been accepted.

2. A request for investigation has been forwarded to the National Guard Bureau.

The agency found no discrimination or retaliation against Lopez.

According to Lopez's affidavit:

On two occasions [Lopez] was made aware that the timeliness of her filing had been brought to the attention of the Louisiana National Guard: in the [National Guard Bureau investigator's] Report of Investigation and by copy of a letter to the head of the National Guard Bureau.... The Louisiana National Guard never communicated to [Lopez] that there was a timeliness problem until the present action.

The pertinent portion of the Report of Investigation to which Lopez refers states:

On 1 April 1985 the Adjutant General, Louisiana National Guard (LANG), ... received a formal complaint ... of alleged discrimination from ... Lopez.... The complaint was filed on 4 February 1985, but because of a misunderstanding between the complainant and the counselor, the complaint was submitted to the office of the Equal Employment Opportunity Commission in New Orleans.

The letter to which Lopez refers (dated February 19, 1987 from Carbonell to Colonel Nelson V. Wood, "Chief, Office of Hu-

---

**8.** On Tuesday, April 2, 1985, the LNG received a second package from Lopez: the envelope was addressed to the Louisiana Adjutant General and was also postmarked Friday, March 29, 1985; inside was another copy of the same written complaint along with a copy of the same cover letter, which copy had a handwritten check mark next to the notation "cc: The State EEO Manager."

**9.** In her statement of material facts, Lopez admits the truth of this statement. On page 5, paragraph 9 of her statement, Lopez misrepresents or mischaracterizes the contents of this letter (she states that this letter "suggested ... that there was no problem of lateness in her filing"); while the letter acknowledges that Lopez was advised of an incorrect address, the letter is wholly silent on any conclusion of timeliness or untimeliness.

man Resources, Department of the Army and the Air Force, National Guard Bureau") does not address the timeliness or untimeliness of the filing of her *entire* formal administrative complaint. While the letter does mention timeliness, it is on a completely different issue; specifically, the letter mentions that Lopez's oblique references in her formal administrative complaint to post-discharge (i.e., post-March 7, 1985) activities were improper for formal administrative consideration inasmuch as Lopez never initially sought informal contact with an EEO counselor either within 30 days after such activities, as is required under 29 C.F.R. § 1613.214(a)(1)(i), or otherwise. The LNG had already advised Lopez of this issue; in a letter dated June 28, 1985 to Lopez, the LNG clarified its acceptance of her administrative complaint to reject her "vague and general" comments on these post-discharge activities.

According to an uncontradicted declaration by CWO2 Bradford, Lopez was a member of an Army National Guard unit stationed at Jackson Barracks until February 15, 1986 and her husband was a full-time employee of this unit. According to Lopez, she was unrepresented by counsel during this whole period.

On October 10, 1989, Lopez filed the instant suit under 42 U.S.C. § 2000e–16 against the Louisiana National Guard and against Herbert R. Temple Jr., Chief of the National Guard Bureau.[10] Her judicial complaint states that "a right to sue letter dated September 14, 1989, was issued." The record indicates neither who issued the letter (that is, whether it was from the agency or, on an appeal from the agency, the EEOC)[11] nor the date Lopez received the letter.

In lieu of filing an answer, the government now moves to dismiss under F.R. Civ.P. 12(b)(1) for lack of subject matter jurisdiction or under F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted or, alternatively, for summary judgment under F.R.Civ.P. 56(b).

## II.

It is now well established that 42 U.S.C. § 2000e–16 provides the sole and exclusive remedy to a federal employee for claims of racial job discrimination.[12] Civilian employees working for the Louisiana National Guard as technicians, such as were Lopez, are considered federal employees.[13] As such, these technicians come

---

**10.** The Court questions, but does not decide, whether Temple is the proper party defendant under 42 U.S.C. § 2000e–16(c), *see James v. Day*, 646 F.Supp. 239, 240–41 (D.Me.1986), and, if not, whether under F.R.Civ.P. 15(c) any amendment to the complaint to name the correct defendant would relate back to the date Lopez filed the original complaint, *see Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), so as to cure such a jurisdictional defect, *see Brown v. Department of Army*, 854 F.2d 77, 79 (5th Cir.1988) (following *Gonzales v. Secretary of the Air Force*, 824 F.2d 392 (5th Cir.1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1245, 99 L.Ed.2d 443 (1988)).

**11.** Under 29 C.F.R. pt. 1613, there are four instances in which an agency is to issue a right-to-sue letter, *see* 29 C.F.R. §§ 1613.-215(b), .217(d), .220(d), .221(e), and two instances in which the EEOC is to issue a right-to-sue letter, *see id.* §§ 1613.234(b), .235(d). *See also id.* §§ 1613.281(a), (c); .282.

**12.** *See Irwin v. Veterans Administration*, 874 F.2d 1092, 1095 (5th Cir.1989) (*Brown* bars such claims under 42 U.S.C. §§ 1985 and 1986), *cert. granted*, — U.S. —, 110 S.Ct. 1109, 107 L.Ed.2d 1017 (1990); *Porter v. Adams*, 639 F.2d

273, 278 (5th Cir. Unit A 1981) (same for such *Bivens* actions); *Newbold v. United States Postal Service*, 614 F.2d 46, 47 (5th Cir.) (per curiam) (same for such claims "under 42 U.S.C. § 1981 *et seq.*"), *reh'g denied mem.*, 616 F.2d 568 (5th Cir.), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980); *see also Hunter v. Stetson*, 444 F.Supp. 238, 239 n. 1 (E.D.N.Y.1977) (applying this rule of *Brown* to a case brought by a civilian employee of the New York Air National Guard). *See generally Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976).

**13.** *Compare* 5 U.S.C. § 102 (defining military departments *to* include the Departments of the Army and the Air Force) *and* 10 U.S.C. § 3040 (defining the National Guard Bureau as "a Joint Bureau of the Department of the Army and the Department of the Air Force") *with* 5 U.S.C. § 2105(a)(1)(C), (D), (F) (defining "employee" under title 5) *and* 32 U.S.C. § 709 (defining a National Guard technician *to* be "an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States.").

within the reach of this statute.[14]

### A.

42 U.S.C. § 2000e–16(c), governing the timeliness of such civil actions, reads in pertinent part:

> Within thirty days of receipt of notice of final action taken by a department, agency, or unit ... or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race [or] color ..., an employee ..., if aggrieved by the final disposition of his complaint, ... may file a civil action ..., in which civil action the head of the department, agency, or unit shall be the defendant.

The Fifth Circuit has consistently held that this 30–day filing limitation is jurisdictional and thus (unlike private discrimination cases under 42 U.S.C. § 2000e–5(f)(1)) is not subject to waiver, estoppel, or equitable tolling.[15]

In enacting 42 U.S.C. § 2000e–16, Congress made no statutory provisions for the time limits an aggrieved employee has to file a formal administrative complaint with her employing agency. Pursuant to its delegated powers under the statute,[16] however, the EEOC has promulgated regulations that do address the issue.[17]

29 C.F.R. § 1613.214(a) governs the time limits for filing formal administrative complaints; it provides in pertinent parts:

> (1) ... The complaint may be delivered in person or submitted by mail. The agency may accept the complaint for processing ... only if:
>
> (i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter, or, if a personnel action, within 30 days of its effective date; and
>
> (ii) The complainant ... submitted his written complaint to an appropriate

---

**14.** *Jones v. Texas Air National Guard,* 584 F.2d 104, 105 (5th Cir.1978) (per curiam); *see Booker v. Brown,* 619 F.2d 57 (10th Cir.1980) (not addressing this issue, but holding that plaintiff could recover attorney's fees under § 2000e–16 for a wrongful "termination as a civilian guard at ... [a] National Guard Bureau" premises); *Thornton v. Coffey,* 618 F.2d 686 (10th Cir.1980) (upholding back pay award for § 2000e–16 claim of race discrimination by a person who "applied for a civilian job with the [Oklahoma National] Guard"); *Miller v. Weber,* 577 F.2d 75 (8th Cir.1978) (per curiam) (not addressing this issue, but addressing the merits of a discrimination claim under § 2000e–16 by a " 'civilian' clerk-typist" for the Arkansas National Guard); *cf. Mares v. Marsh,* 777 F.2d 1066, 1067 (5th Cir.1985) ("The protections of Title VII extend to civilian employees of the Army."). *See generally* 42 U.S.C. § 2000e–16(a) (statute applies to "employees ... in military departments as defined in section 102 of Title 5"); 29 C.F.R. § 1613.201(b)(1)(i) (29 C.F.R. §§ 1613.201–.283, the EEOC's regulations under § 2000e–16, apply to "military department[s]").

**15.** *E.g., Hernandez v. Aldridge,* 866 F.2d 800, 802 (5th Cir.1989) (distinguishing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)), *vacated sub nom. Hernandez v. Rice for further consideration on other grounds,* —— U.S. ——, 110 S.Ct. 1314, 108 L.Ed.2d 490 (1990); *accord Munoz v. Aldridge,* 894 F.2d 1489, 1494 (5th Cir.1990).

In her brief, Lopez repeatedly cites to cases not under § 2000e–16 (for federal employees), but under § 2000e–5 (for private sector employees). For among other reasons the rationale explained in *Brown v. Department of Army,* 854 F.2d 77, 78 n. 1 (5th Cir.1988) (citing *Sims v. Heckler,* 725 F.2d 1143, 1146 (7th Cir.1984), *and followed in Hernandez,* 866 F.2d at 802–03), which addresses the United States' limited waiver of sovereign immunity, and the general observation that the EEOC regulations under § 2000e–16 differ significants and materially from those under § 2000e–5, these cases cited by Lopez are generally inapplicable or otherwise only most tangentially related to the issues here of timeliness against the government.

**16.** *See Henderson v. United States Veterans Administration,* 790 F.2d 436, 439 (5th Cir.1986); *Cooper v. Lewis,* 644 F.2d 1077, 1081 & nn. 10–11 (5th Cir. Unit A 1981); *Allen v. United States,* 542 F.2d 176, 179–80 (3d Cir.1976); 42 U.S.C. § 2000e–16(b); *cf. General Electric Co. v. Gilbert,* 429 U.S. 125, 141 n. 20, 97 S.Ct. 401, 410 n. 20, 50 L.Ed.2d 343 (1976) (discussing 42 U.S.C. § 2000e–12(a)).

**17.** The Court is required to give great deference to the EEOC's interpretation of the procedural regulations it has promulgated on timeliness within the administrative process under § 2000e–16. *See Cooper,* 644 F.2d at 1084.

official within 15 calendar days of the date of his final interview with the Equal Employment Opportunity Counselor.

(2) The appropriate officials to receive complaints are the head of the agency, the agency's Director of Equal Employment Opportunity, the head of a field installation, an Equal Employment Opportunity Officer, a Federal Women's Program Coordinator, and such other officials as the agency may designate for that purpose. Upon receipt of the complaint, the agency official shall transmit it to the Director of Equal Employment Opportunity or appropriate Equal Employment Opportunity Officer who shall acknowledge its receipt in accordance with paragraph (a)(3) of this section.

(3) A complaint shall be deemed filed on the date it is received, if delivered to an appropriate official, or on the date postmarked if addressed to an appropriate official designated to receive complaints. The agency shall acknowledge, in writing, to the complainant ... receipt of the complaint....

(4) The agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) for other reasons considered sufficient by the agency.[18]

29 C.F.R. § 1613.213(a) provides in pertinent part the following concerning "pre-complaint processing," that is, concerning the informal complaint process an aggrieved employee must initiate with an EEO counselor before filing a formal administrative complaint:

An agency shall require that an aggrieved person who believes that ... she has been discriminated against because of race ... consult with an Equal Employment Opportunity Counselor to try to resolve the matter. ... If, within 21 days, the matter has not been resolved to the satisfaction of the aggrieved person, that person shall be immediately informed in writing, at the time of the final interview, of ... her right to file a complaint of discrimination. The notice shall inform the complainant of ... her right to file a discrimination complaint at any time up to 15 calendar days after receipt of the notice of the appropriate official with whom to file a complaint.... The Counselor shall not attempt in any way to restrain the aggrieved person from filing a complaint.... [19]

While no circuit or Supreme Court opinion appears to have addressed the timeliness provisions at issue here (that is, the 15–day limit in 29 C.F.R. § 1613.214(a)(1)(ii) for filing a formal, written administrative complaint with the employing agency), a series of five Fifth Circuit opinions has addressed the related timeliness provision for initially presenting an informal administrative complaint to an EEO counselor of the employing agency.[20] Several controlling rules follow from these opinions.

**18.** Effective November 30, 1987, see 52 Fed.Reg. 41,920, 41,922–23 (Oct. 30, 1987), these provisions were slightly modified; the sole changes of any arguable substance were those to clauses (a)(1)(i) and (a)(1)(ii), which were modified to read as follows:

(i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action; and

(ii) The complainant or representative submitted the written complaint to an appropriate official within 15 calendar days after the date of receipt of the notice of the right to file a complaint.

**19.** This provision was likewise amended in 1987 with minor, stylistic changes.

**20.** *Huntley v. Department of Health, Education and Welfare,* 550 F.2d 290, 295 & n. 2 (5th Cir.1977) (addressing the predecessor regulation to § 1613.214(a)(4), namely, 5 C.F.R. § 713.214(4)); *Bickham v. Miller,* 584 F.2d 736 (5th Cir.1978) (same); *Oaxaca v. Roscoe,* 641 F.2d 386, 391 (5th Cir. Unit A 1981) (addressing 29 C.F.R. § 1613.214(a)(1)(i)); *Henderson v. United States Veterans Administration,* 790 F.2d 436, 439–41 (5th Cir.1986) (same); *Munoz v. Aldridge,* 894 F.2d 1489, 1494–95 (5th Cir.1990) (addressing the analogous deadline in 29 C.F.R.

■ First, any failure to satisfy these timeliness requirements, while perhaps not a subject matter jurisdiction defect, constitutes a failure to state a proper judicial claim under 42 U.S.C. § 2000e–16.[21] Second, as the EEOC has now explicitly provided in the text of 29 C.F.R. § 1613.214(a)(1)(i), the commencement of this time period begins on "the date the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action."[22] Third, where the employing agency makes no explicit finding of timeliness and rejects the merits of the complaint, the mere fact that the agency accepted the complaint is alone insufficient to support a conclusion that the agency extended, under § 1613.214(a)(4), the time period at issue so as to make an otherwise untimely complaint timely (or, in the language of one case,[23] "waived" the right to assert untimeliness as a dispositive defense to a subsequent lawsuit).[24] Fourth, if the employing agency makes an explicit finding of discrimination in its final administrative decision but does not address the issue of timeliness, then this circumstance may constitute an implicit extension by the agency under § 1613.214(a)(4)(ii), to the extent necessary, of this time period up to the date the administrative complaint was filed.[25] Finally, if the employing agency makes a specific, explicit finding of timeliness in its final administrative decision irrespective of any conclusion it may reach on the merits of the complaint, then this finding constitutes, by implication of law and to the extent necessary, a time-period extension by the agency under § 1613.214(a)(4) up to the date the administrative complaint was filed; in such circumstances, the government is barred from attacking in courts its agency's prior explicit finding of timeliness.[26] "[A]gencies may inadvertently overlook timeliness problems and should not thereafter be bound";[27] therefore, explicit findings of timeliness must be just that, explicit.[28]

None of these cases otherwise discusses the amount of time that the agency is deemed to have granted for an extension under § 1613.214(a)(4) in those instance where the court is to imply that the agency granted or should have granted an extension.[29]

## B.

The Court now turns to the more specific issue of timeliness under § 1613.214(a)(1)(ii) and (a)(4). Contrary to Lopez's suggestion, the issue is not whether the equity considerations already set forth in § 1613.214(a)(4) should or should not be applied; the government properly agrees

§ 1613.602(a) for presenting a class-action discrimination claim to an EEO counselor).

**21.** See Henderson, 790 F.2d at 440; Oaxaca, 641 F.2d at 388. But cf. Bickham, 584 F.2d at 738 ("timely filing is jurisdictional," although the commencement of the filing period under (former) § 1613.214(a)(1)(i) is subject to equitable delay "in certain instances").

**22.** See Oaxaca, 641 F.2d at 388; Bickham, 584 F.2d at 738. Both cases, like the others cited above in note 20, concern the former version of § 1613.214(a)(1)(i). Unlike the former version, the present version of the regulation explicitly provides equitable consideration for when the time-period is to commence. Thus, the Court questions, without deciding, whether the statements in these cases that commencement of the time period is subject to equity principals independent of the provisions in the regulation remains applicable.

**23.** Oaxaca, 641 F.2d at 389–90.

**24.** See Henderson, 790 F.2d at 440–41 (explaining and distinguishing Oaxaca, 641 F.2d at 390).

**25.** See Huntley, 550 F.2d at 295; cf. Henderson, 790 F.2d at 441 (explaining how and why Oaxaca narrowed the reach of Huntley).

**26.** Munoz, 894 F.2d at 1494–95; Henderson, 790 F.2d at 441.

**27.** Henderson, 790 F.2d at 441 (citing Scott v. Claytor, 469 F.Supp. 22, 24 (D.D.C.1978)).

**28.** See id. at 441; Munoz, 894 F.2d at 1494–95 (distinguishing Oaxaca by noting that the agency at issue "had done a good deal more than simply accept and investigate this complaint").

**29.** Cf. Oaxaca, 641 F.2d at 392 (not considering "how long after the occurrence of the events the lack of awareness of the time delays or an equitable tolling of the running of the time period for notification or filing may be asserted or whether either excuse may be barred by laches or for some other reason").

that Lopez should not be held to an unextended 15–day deadline of March 12, 1985. Instead, the sole issue is how much additional time did Lopez have within which to file her formal complaint.

On the one hand, Lopez argues that the 15–day period should not begin running until the date she received Horton's letter of March 15, 1985.[30] On the other hand, the government argues that the 15–day period commenced, in accordance with § 1613.214(a)(1)(ii), on February 25, 1985 (the date of the final interview) and that the running of the 15–day period was merely suspended from March 5, 1985 (the date Lopez erroneously tendered her complaint to the EEOC) to, at the latest, the date Lopez received Horton's letter of March 15, 1985 (the letter unambiguously informing Lopez that her complaint could not be filed with the EEOC and instead should be filed with LNG officials at Jackson Barracks) so that Lopez had seven more days thereafter within which to file her complaint. Neither side bases its position through textual support from the EEOC regulations, nor does either side provide judicial support from any federal Title VII case under § 2000e–16.

Suggesting that "[t]here are no federal regulations as to tolling, suspension or interruption of the Title VII time limits," Lopez argues: "When a federal statute fails to provide rules or regulations to govern certain circumstances, the courts may look to state law to fill the gap." In support, she cites *Ford v. Stone*,[31] wherein the district court dismissed a plaintiff's civil right suit under 42 U.S.C. § 1983 as untimely and noted, in passing, that the limitation period for § 1983 claims brought in Louisiana are governed by Louisiana's codal provisions on prescription, including its provisions in Louisiana Civil Code articles 3462–3472 for interruption and suspension of prescription.

Citation to *Ford* or similar § 1983 cases is, however, misplaced, for the premise to Lopez's argument is incorrect. On the one hand, 42 U.S.C. § 1983 contains absolutely no provisions on limitation periods, and claims thereunder may be brought in either federal or state court and may depend in part on the status or interpretation of state law;[32] on the other hand, the federal scheme under 42 U.S.C. § 2000e–16 (and specifically, the EEOC regulations promulgated thereunder in 29 C.F.R. § 1613.214) contains not only specific limitation periods but also specific provisions for extending those periods under certain enumerated conditions, and claims thereunder, being permitted by Congress as limited waivers of the national government's sovereign immunity, may be asserted solely in federal court[33] and solely against certain enumer-

---

**30.** If Lopez were correct on her legal position that she had 15 full days after the date she received notice of the address error, then the government's limitation defense would, at least on the basis of the record at this time, fail even if the Court presumes that Carbonell's letter in fact gave Lopez such notice, for Lopez received his letter on March 14, 1985 and filed her complaint 15 days thereafter, on March 29, 1989.

**31.** 599 F.Supp. 693, 695 (M.D.La.1984), *aff'd in unpublished opinion*, 774 F.2d 1158 (5th Cir. 1985) (table).

**32.** The mere absence of limitation provisions in a federal statute does not necessarily mean in all cases, however, that state law is to be "borrowed." *See Agency Holding Corp. v. Malley-Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (looking to the limitation provisions under the Clayton Act, and refusing to look to state law limitations provisions, for civil cases brought under RICO, which itself contains no limitation provisions [and further must often look in part to state law for complete

resolution, *see Tafflin v. Levitt*, —— U.S. ——, ——, 110 S.Ct. 792, 798, 107 L.Ed.2d 887 (1990) ] ).

**33.** *Compare* 42 U.S.C. § 2000e–16(c) ("an employee ... may file a civil action as provided in section 2000e–5 of this title") *with id.* § 2000e–5(f)(3) ("Each United States district court ... shall have jurisdiction of actions brought under this subchapter [42 U.S.C. §§ 2000e to 2000e–17].") The Fifth Circuit has not addressed this issue, relative to claims under either § 2000e–5 or § 2000e–16; the sole circuit courts to address the issue have done so solely with respect to claims under § 2000e–5, three circuits holding that federal jurisdiction is exclusive and one holding to the contrary. *Compare Bradshaw v. General Motors Corp.*, 805 F.2d 110, 112 (3d Cir.1986) *and Jones v. Intermountain Power Project*, 794 F.2d 546, 553 (10th Cir.1986) *and Valenzuela v. Kraft, Inc.*, 739 F.2d 434, 435–36 (9th Cir.1984) *with Donnelly v. Yellow Freight Systems, Inc.*, 874 F.2d 402, 405–10 (7th Cir.1989), *cert. granted*, —— U.S. ——, 110

ated federal officials in their official capacities [34] and do not turn at all on interpretations of state law. Where Congress has struck a "balance between the policies of repose and the substantive policies of enforcement" [35] by enacting provisions specifically addressing limitation issues, it is unnecessary and inappropriate to borrow from state laws; [36] this same rationale applies equally here, where the EEOC has promulgated such limitation provisions under the authority duly delegated to it by Congress. [37] Indeed, the Supreme Court has held on the one hand that EEOC enforcement actions against private employers are not subject to "the vagaries of diverse state limitations statutes" [38] and on the other hand that § 1981 claims, subject as they are to borrowed state limitation provisions, do not enjoy the further benefit

of any tolling features from a parallel Title VII proceeding. [39]

Lopez's argument further errs by presuming that courts always equate the term "tolling" with—to use Louisiana codal terminology for lack of a better word—"interruption" of the applicable limitation period. First, the Louisiana Civil Code itself recognizes two distinct tolling principles: interruption and suspension, [40] the latter being the form of tolling that the government in essence asserts should be applied here. Second, federal courts including the Fifth Circuit have used the term "tolling" where—again to use Louisiana codal terminology—suspension, and not interruption, is the form of tolling at issue. [41] Third, and perhaps most important, the EEOC's regulations in § 1613.214(a)(4) do not speak in

S.Ct. 363, 107 L.Ed.2d 349 (1989). While *Donnelly* appears well-reasoned for claims against private defendants, especially in light of *Tafflin,* the Court rejects its applicability to claims under § 2000e–16, for these claims are asserted not against private persons or state officials, but against the national government. In any event, long experience has shown that, at least in this district, the United States Attorney removes *all* cases that he must defend, even those in which Congress has specifically provided for concurrent jurisdiction, *see, e.g.,* 28 U.S.C. § 2410(a); thus, whatever the merits of extending the holding in *Donnelly* to claims under § 2000e–16, any such claims will, as a practical matter in this district, almost certainly be tried in this Court and not in a state court.

**34.** *See Brown v. Department of Army,* 854 F.2d 77, 79 (5th Cir.1988); *Gonzales v. Secretary of Air Force,* 824 F.2d 392, 394, 396 (5th Cir.1987), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1245, 99 L.Ed.2d 443 (1988); *id.* at 397 (Brown, J., dissenting); *Hall v. Small Business Administration,* 695 F.2d 175, 180 (5th Cir.1983); *Newbold v. United States Postal Service,* 614 F.2d 46, 47 (5th Cir.) (per curiam), *reh'g denied mem.,* 616 F.2d 568 (5th Cir.), *cert. denied,* 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980); 42 U.S.C. § 2000e–16(c) ("the head of the department, agency, or unit, as appropriate, shall be the defendant").

**35.** *Hardin v. Straub,* —— U.S. ——, ——, 109 S.Ct. 1998, 2000, 104 L.Ed.2d 582 (1989) (quoting *Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985)).

**36.** *See Garrison v. International Paper Co.,* 714 F.2d 757, 759 n. 2 (8th Cir.1983) (refusing to apply a state saving clause to a Title VII case under § 2000e–5) (citing, among others, *Holm-*

*berg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter.")); *cf. Chardon v. Fumero Soto,* 462 U.S. 650, 662, 103 S.Ct. 2611, 2619, 77 L.Ed.2d 74 (1983) ("Until Congress enacts a federal statute of limitations to govern § 1983 litigation, comparable to the statute it ultimately enacted to solve the analogous problems presented by borrowing state law in federal anti-trust litigation, federal courts must continue the practice of 'limitation borrowing'") (footnote omitted).

**37.** *See* cases cited above in note 16 (Congress delegated authority to the EEOC to promulgate regulations under 42 U.S.C. § 2000e–16).

**38.** *Occidental Life Insurance Co. of California v. EEOC,* 432 U.S. 355, 370–371, 97 S.Ct. 2447, 2457, 53 L.Ed.2d 402 (1977).

**39.** *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (holding that timely filing of a discrimination charge with the EEOC under § 2000e–5 did not toll the running of the limitation period for a § 1981 action based on the same facts).

**40.** *Compare* La.Civ.C. arts. 3462–3466 *with id.* arts. 3467–3472.

**41.** *See, e.g., United States v. Fisher,* 895 F.2d 208, 211 (5th Cir.1990) (discussing tolling of probationary terms under (former) 18 U.S.C. § 3651); *see also* Black's Law Dictionary 1334 (5th ed. 1979) (defining the verb toll as "To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority.").

terms of interrupting and recommencing any filing period set forth in § 1613.214(a)(1), but instead speak merely of "extending" the filing period.

In this case, several points are undisputed. First, Lopez did not file her formal administrative complaint within 15 days of her final interview with CWO2 Bradford. Second, Lopez received actual, written notice at this final interview that she had only 15 days within which to file any formal complaint of discrimination. Third, CWO2 Bradford's written notice correctly advised Lopez of the *names* of the persons under § 1613.214(a)(2) to whom such a formal administrative complaint may be submitted, but incorrectly advised her of the *address* for one of these persons. Further, there is no evidence that at any time Lopez was *physically* incapable of filing—i.e., mailing, personally hand-delivering, or having her husband, who worked at Jackson Barracks, or another person hand-deliver on her behalf—her formal administrative complaint with one of the proper persons designated under § 1613.214(a)(2) or that CWO2 Bradford intentionally or knowingly supplied Lopez with an improper address or otherwise "attempt[ed] in any way to restrain" Lopez from filing her complaint in contravention of § 1613.213(a).[42]

■ Lopez suggests that CWO2 Bradford's notice with its single incorrect address, among the five addresses listed, constituted "circumstances beyond h[er] control" that "prevented" her from filing her complaint on time. The Court refuses to construe the term "prevent" in such a contorted fashion. This provision in § 1613.214(a)(4)(i) is directed toward instances where the employee is physically unable to file her complaint in a timely fashion, such as where the employee is dangerously ill.[43] The term "was prevented" simply does not mean "was deterred" or "was adversely affected."

Because Lopez was "notified of the time limits" at her final interview and was not "prevented by circumstances beyond h[er] control from submitting the matter within the time limits," Lopez's case does not come within the reach of § 1613.214(a)(4)(i). The sole basis for Lopez's extension, then, is under the provisions in § 1613.214(a)(4)(ii).

■ Clause (a)(4)(ii) gives the agency the discretion to determine whether "other reasons considered" are "sufficient" for extending, among other limits, the 15–day time limit in clause (a)(1)(ii); if in its discretion the agency finds such "other reasons considered sufficient," then clause (a)(4)(ii), using the verb "shall," makes its mandatory for the agency to extend the time limit pursuant to that discretion. The plaintiff in a § 2000e–16 case with an administrative complaint that on its face appears to have been filed after the administrative time limit had expired has the burden of proof to establish that, pursuant to clause (a)(4)(ii), her employing agency did extend or should have extended this time limit up to or beyond the date her complaint was filed.[44] In sum, then, a court's power to review any such agency action or inaction is rather limited: the Court is only to determine whether the agency in fact exercised such discretion so as to extend a deadline to make an otherwise untimely complaint timely and, if the agency did not

---

**42.** Lopez agrees that CWO2 Bradford acted "without fraudulent intent." *See* Plaintiff's Opposition Memorandum at 11–12. At most, one could conclude that CWO2 Bradford, as an EEO counselor, was negligent in supplying an erroneous address by confusing an agency's Director of Equal Employment Opportunity with the Equal Employment Opportunity Commission. Such confusion is apparently not uncommon, as is evidenced in part by the continuing failure by plaintiff's counsel, who unlike most EEO counselors are trained lawyers, to recognize the distinction between the EEOC and an agency's EEO Director.

**43.** *Cf. Ganheart v. Lujan,* 733 F.Supp. 1053, 1058 (E.D.La.1990) (Carr, J.) (addressing similar language in 29 C.F.R. § 1613.233(c) of "circumstances beyond his or her control [that] prevented the filing").

**44.** *See Cooper v. Bell,* 628 F.2d 1208, 1214 n. 4 (9th Cir.1980) (concerning the 30–day time limit in § 1613.214(a)(1)); *cf. Ayo v. Johns–Manville Sales Corp.,* 771 F.2d 902, 908–09 (5th Cir.1985) (same burden under Louisiana law).

do so, whether the agency abused its discretion in not doing so.[45]

## III.

The Court must determine whether the LNG in fact extended Lopez's 15–day deadline to March 29, 1985 and, if not, whether it abused its discretion in not doing so.

On its face, Lopez's formal administrative complaint was filed 17 days too late; thus, Lopez bears the ultimate burden of proof to show that her complaint should nonetheless be held to have been timely filed. Because this motion is brought, at least partially, as a summary judgment motion, plaintiff must come forward at this time with sufficient evidence, at a minimum, of a genuine dispute that her complaint was timely filed—in other words, a genuine dispute that the LNG either extended her filing deadline to March 29, 1985 or abused its discretion in not doing so.[46]

## A.

While the parties have submitted a copy of neither an ALJ's recommendation under § 1613.218 nor the agency's final administrative decision under § 1613.221 (nor, if an appeal to the EEOC was taken from any such final decision, a copy of the EEOC's final decision under § 1613.234), the Court presumes—as it must for summary judgment purposes where Lopez bears the burden of proof on the issue—that the agency's final decision (as well as the ALJ's recommendations and any EEOC decisions) does not specifically and explicitly find Lo-

pez's formal administrative complaint to have been timely under § 1613.214 and does not otherwise specifically purport to extend the 15–day filing deadline in § 1613.214(a)(1)(ii) all the way to March 29, 1985.

Lopez does not attempt to suggest otherwise. Instead, she argues that a report of investigation by a National Guard Bureau investigator and a letter from an EEOC official to an EEO official of the National Guard Bureau both found Lopez's administrative complaint to be timely filed. The argument is both immaterial and inaccurate. On the one hand, neither the report nor the letter constitutes the agency's final administrative decision under § 1613.221. It is the head of the agency or his designee who issues the final administrative decision under § 1613.221; as is implicit from § 1613.221(b)(2),[47] the person who issues the final administrative decision thereunder is not bound by recommendations of an ALJ, an EEO investigator, or others. On the other hand, neither the report nor the letter made such a finding of timeliness. Both the report and the letter merely note Lopez's factual explanation for why she filed her complaint after the 15–day deadline had passed, and neither purports to draw any legal conclusions of timeliness or untimeliness from that explanation; further, the letter's sole legal conclusion about timeliness is that Lopez's post-discharge allegations were unquestionably *un* timely inasmuch as she had never, within 30 days of the alleged post-discharge incidents or otherwise, sought first to meet informally with an EEO counselor, as the regulations

---

**45.** *Cf. Ganheart,* 733 F.Supp. at 1058 (the EEOC's decision under 29 C.F.R. § 1613.233(c) whether to extend the time limit for filing a notice of appeal before it lies within its discretion, and judicial review of such a decision is under an abuse-of-discretion standard).

**46.** *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (where the nonmoving party bears the burden of proof on a dispositive issue at trial, the party moving for summary judgment need not submit affidavits or other evidence on that issue and instead the nonmoving party must affirmatively present evidence, beyond the mere allegations

in the complaint, showing there is a genuine dispute of material fact); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (in determining whether there is a genuine issue of material fact necessary to defeat a summary judgment motion, the court must apply the evidentiary standard of proof that would apply at a trial on the merits).

**47.** 29 C.F.R. § 1613.221(b)(2), both before and after the 1987 amendments, provides in part that "[t]he decision of the agency shall adopt, reject, or modify the decision recommended by the Administrative Judge."

in § 1613.213 require.[48]

Like the LNG's initial letter of April 17, 1985 "accepting" Lopez's formal administrative complaint, this report and this letter are inadequate to constitute or imply an express finding of timeliness sufficient to preclude the government from now attacking the timeliness of Lopez's complaint.[49] To repeat in paraphrase, silence on the issue of timeliness in the agency's final decision, at least where there is no final agency finding of discrimination or retaliation,[50] is insufficient to constitute an explicit (or implied) extension of any time limits in § 1613.214 so as to make an otherwise untimely complaint timely.[51]

In sum, the Court holds that the LNG did not make an express finding that Lopez's complaint was timely filed, for "reasons considered" under § 1613.214(a)(4)(ii) or otherwise.

### B.

The government concedes that it would have been an abuse of discretion for the agency not to suspend the running of the 15–day filing period between the date Lopez acted on the erroneous information CWO2 Bradford gave her and the date she was advised of the error and unambiguously told where to submit her complaint. With this concession, the Court must still address two issues: first, does the record present a genuine factual dispute whether Lopez filed her complaint within seven days[52] following the date she learned of the error; and second, if not, does the record present a genuine factual dispute that the agency abused its discretion under § 1613.214(a)(4)(ii) by not further extending the time Lopez had to file her formal administrative complaint. As explained below, the Court finds insufficient evidence of a timely filing or of an abuse of discretion and thus answers the two issues in the negative.

### 1.

Both sides properly agree that Horton's letter to Lopez of March 15, 1985 not only fully advised Lopez that the EEOC was not a proper recipient of her administrative complaint, but also unambiguously advised her with whom and where her complaint may properly be filed.[53] In resolving this first issue indicated above, the Court must determine whether the record contains a genuine factual dispute whether Lopez received this letter on or after March 22, 1985, that is, within seven days of March 29, 1985, the date she filed her complaint under § 1613.214(a)(3) by postmarking it to a proper LNG official under § 1613.214(a)(2).

The record does not establish the exact date on which Lopez received this letter. In an affidavit, Lopez merely states that she "does not recall whether she received this second letter from Horton on March 17, 18 or shortly thereafter." This statement is no more sufficient than would be a statement that Lopez does not remember at all when she received the letter or than

---

**48.** *See also Butler v. United States Department of Agriculture,* 826 F.2d 409, 411 n. 1 (5th Cir.1987) (citing *Oaxaca*).

**49.** *Contrast Munoz,* 894 F.2d at 1494–95; *Henderson,* 790 F.2d at 441.

**50.** *Contrast Huntley,* 550 F.2d at 295.

**51.** *See Henderson,* 790 F.2d at 440–41 (explaining *Oaxaca,* 641 F.2d at 390).

**52.** This seven-day figure equals the number of days that remained in the 15–day filing period under the assumption that the running of the filing period was suspended after the eighth day (viz., after Tuesday, March 5, 1985, when Lopez tendered her complaint to the local EEOC of-

fice) of the filing period, which began on Monday, February 25, 1985, when CWO2 Bradford held his final interview with Lopez and gave her oral and written notice of her right to file a formal administrative complaint within 15 days thereafter.

**53.** Because the Court determines that Lopez is unable to obtain relief from this March 15th letter, the Court does not and need not determine alternatively whether, as the government now contends notwithstanding Lopez's affidavit, Lopez has presented a genuine dispute whether the letter of March 12, 1985 from Carbonell to Lopez also advised Lopez that the EEOC was an improper recipient of her complaint. In light of the Court's holding, this alternative issue is immaterial.

would be an absence of any statement at all on this evidentiary point.

In the three instances where the record affirmatively sets forth the date a letter was mailed and received (viz., Carbonell's letter to Lopez, Lopez's complaint mailed to the LNG Adjutant General, and her complaint mailed to the "State EEO Manager"), the delay time between the mailing and receipt was between two and four days (the three- and four-day delay periods for Lopez's two mailings occurring over an intervening weekend). The record contains no other evidence that the postal delivery time for the other letters sent by mail took longer than four days, or even longer than the five-day period under the EEOC's new provisions in 29 C.F.R. § 1613.240(b) for illegibly-postmarked mail; in this regard, the Court takes judicial notice under F.R.Ev. 201(b) that no federal, state, or local holiday fell within the month of March 1985. In sum, the factual context of the record, without more, makes it implausible to support a reasonable inference that Lopez received Horton's letter of March 15, 1985 seven or more days thereafter. Thus, Lopez cannot defeat summary judgment by merely stating that she "may" have received the letter "shortly after" March 19, 1985.[54]

■ As stated, Lopez bears the burden to establish that her complaint was timely filed; in order to defeat summary judgment on the basis that there is a genuine dispute whether she received Horton's letter on or after March 22, 1985, then, she has the burden to come forward with affirmative evidence that she received the letter on or after that date. Offering no such evidence, Lopez has failed to meet this burden.[55]

2.

■ The sole remaining basis for Lopez to defeat summary judgment is for her to show that the agency abused, or that there exists a genuine dispute whether the agency abused, its discretion in not extending the 15–day filing period more than seven days following her receipt of Horton's letter of March 15, 1985, and more specifically in not extending the 15–day filing period up to March 29, 1985.

Several undisputed facts favor the government's position. First, there is no evidence that CWO2 Bradford or anyone else intentionally attempted to mislead Lopez.[56] Second, there is no evidence that anyone told Lopez—or even a suggestion that Lopez herself reasonably believed at that time—that she had additional 15 days following her receipt of either Carbonell's letter or Horton's letters within which to file her complaint. Third, there is no evidence that Lopez needed additional time, following her receipt of the letters from Carbonell and Horton, within which to prepare her written complaint; she had already completed the complaint by March 5, 1985 and had only to mail or deliver the complaint, which had been returned to her, to a proper LNG official. Fourth, there is no evidence that Lopez was physically incapable of filing her complaint within seven days after her receipt of Horton's letter.

In sum, Lopez had ample time and opportunity during this seven day period within which to file a timely complaint.[57] Because

**54.** *See generally Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**55.** *See Afco Steel, Inc. v. TOBI Engineering, Inc.*, 893 F.2d 92, 94 (5th Cir.1990).

**56.** *See* above note 42 and accompanying text; *cf. Cooper v. Bell*, 628 F.2d 1208, 1214 (9th Cir.1980) (addressing a plaintiff's failure to initiate an informal complaint under the predecessor to § 1613.214(a)(1)(i)) ("To establish a basis for estoppel against the government, [plaintiff] must prove [among other enumerated elements]: that [CWO2 Bradford]'s advice consti-

tuted 'affirmative misconduct' "). *Contrast Ott v. Midland–Ross Corp.*, 600 F.2d 24, 33–34 (6th Cir.1979) (where an employer employs "artifice or misrepresentation ... wrongfully calculated to induce [a plaintiff] to forego suit," the 3–year limitation period for wilful violations of the ADEA would not begin until the plaintiff "discovered or should have discovered he had been duped").

**57.** *See Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1531 n. 4 (11th Cir.1983) (directing that plaintiff's ADEA claims be dismissed with prejudice as untimely) ("If there is still ample time to institute the action within the statutory

Lopez failed to do so, the Court cannot conclude that the agency abused its discretion in not extending Lopez's 15–day filing period to March 29, 1985 or to any other date more than seven days after Lopez received Horton's letter.

In holding that Lopez's complaint was untimely, the Court does not mean to imply that the appropriate test is merely a mechanical one that subtracts from 15 the number of days a plaintiff waited before initially tendering her complaint with the EEOC or some other incorrect agency; for example, the Court does not imply that if Lopez had waited until March 11, 1985 (i.e., 14 days after her final interview with her EEO counselor) before attempting to file her complaint at the EEOC, she would have had only one day after receipt of Horton's letter within which to file her complaint. That eleventh-hour scenario, involving different "other reasons considered" and thus different elements for determining an abuse of discretion, is not before the Court.

## IV.

For these reasons, the Court dismisses plaintiff's complaint with prejudice at her costs.[58]

period after the circumstances inducing delay have ceased to operate, a plaintiff who failed to do so cannot claim estoppel.") (citing *Troutman v. Southern Railway Co.*, 296 F.Supp. 963, 970 (N.D.Ga.1968) (granting summary judgment on a limitation defense where alleged fraudulent representations had ceased more than a year prior to the termination of the four-year limitations period), *aff'd on appeal on other issues*, 441 F.2d 586 (5th Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971)); *cf. Cooper v. Bell*, 628 F.2d at 1214 ("To establish a basis for estoppel against the government, [plaintiff] must prove [among other enumerated elements]: ... that the time within which he did file was reasonable in light of all the circumstances."); *Ott*, 600 F.2d at 34 n. 12 (in opposing a limitation defense where there is only unintentional error, "a plaintiff may be permitted to prove that the remaining unexpired period was not a 'reasonable time' in which to bring suit").

**58.** While the provisions in 42 U.S.C. § 2000e–5(k) (made applicable to this action by 42 U.S.C. § 2000e–16(d)) generally give the court the discretion to award the prevailing party attorney's fees as part of its costs, these provisions do not apply where the government (viz., defendant Temple as Chief of the National Guard Bureau) is the prevailing party. *See Butler v. United States Department of Agriculture*, 826 F.2d 409, 411–14 (5th Cir.1987).